## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>**STREAM TV NETWORKS, INC., et al.,**<br><br>Debtors. | **CHAPTER 11**<br><br>**Bankr. No. 23-10763 (DJB)**<br><br>**(Jointly Administered)** |
| **VISUAL SEMICONDUCTOR, INC.,**<br><br>Plaintiff,<br>v.<br><br>**REMBRANDT 3D HOLDING, LTD., et al.,**<br><br>Defendants. | **Adv. No. 25-00197 (DJB)** |

## MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 11
## <u>TRUSTEE'S MOTION TO DISMISS ADVERSARY COMPLAINT</u>

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ..................................................................................................2

        A.      Prior Stream Bankruptcy Cases .................................................................2

        B.      The 363 Sale ..............................................................................................3

        C.      The Trustee Settles Disputes With Rembrandt .........................................9

        D.      VSI's First Amended Complaint .............................................................10

III.    APPLICABLE LEGAL STANDARD ..............................................................11

IV.     ARGUMENT .....................................................................................................13

        A.      VSI's Claims Against The Trustee Are Barred Or Otherwise Mooted By This
                Court's Sale Approval Order ...................................................................13

        B.      The Trustee Was Acting Pursuant To The Bankruptcy Court's Orders And Is
                Thus Immune From Suit ..........................................................................18

        C.      VSI Fails to State Any Claims For Relief Against the Trustee ...............19

                1.      Declaratory Judgment (Count I) and Injunction (Count II) .......19

                2.      Promissory Estoppel (Count V) ................................................24

                3.      Conversion (Count VI) .............................................................25

                4.      The DTSA (Count VII) .............................................................26

                5.      Conspiracy/Aiding and Abetting (Count VIII) .........................28

V.      CONCLUSION...................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Am. Glass Mach. v. Ott*, No. CV 23-275, 2025 WL 1519934 (W.D. Pa. May 28, 2025) ........... 27

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 12

*Bistrian v. Levi*, 696 F.3d 35 (3d Cir. 2012) ................................................................ 12

*Brennan v. FSD Pharma Inc.*, No. CV 21-3771, 2021 WL 5882115
   (E.D. Pa. Dec. 13, 2021) ......................................................................... 22, 24

*Buck v. Hampton Tp. School Dist.*, 452 F.3d 256 (3d Cir. 2006) ................................. 12

*CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187 (3d Cir. 1999) ...................... 15

*C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-CV-379-KKC, 2019 WL 1368621
   (E.D. Ky. Mar. 26, 2019) ......................................................................... 29

*E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000) .......................... 17

*Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100 (3d Cir. 2018) .................... 12

*Garrett v. Wexford Health*, 938 F.3d 69 (3d Cir. 2019) ........................................... 12

*Greenstar Techs., LLC v. Gouru*, No. CV 23-21293 (MAS) (JBD),
   2025 WL 1311397 (D.N.J. May 5, 2025) ................................................... 27

*Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-CV-02888, 2021 WL 229322
   (E.D. Pa. Jan. 22, 2021) .......................................................................... 27

*Hudak v. Apostolate for Fam. Consecration, Inc.*, No. 2:22-CV-173, 2023 WL 5670713,
   (W.D. Pa. July 26, 2023) ......................................................................... 21

*In re Cambrian Holding Co., Inc.*, 110 F.4th 889 (6th Cir. 2024) .............................. 15

*In re EXDS, Inc.*, 316 B.R. 817 (Bankr. D. Del. 2004) ........................................... 17

*In re Flanagan*, 503 F.3d 171 (2d Cir. 2007) ...................................................... 13

*In re Fundamental Long Term Care, Inc.*, 628 B.R. 344 (Bankr. M.D. Fla. 2021),
   *aff'd* 2023 WL 2139226 (M.D. Fla. Feb. 21, 2023) .................................... 16

*In re Gay*, 2024 WL 2947614 (Bankr. W.D. Pa. June 11, 2024) ................................ 16

*In re JDN Props. at Florham Park, LLC*, No. 10-11697 (VFP), 2015 WL 5168600
   (Bankr. D.N.J. Aug. 31, 2015) ................................................................. 20

*In re Martin*, 91 F.3d 389 (3d Cir. 1996) ............................................................ 4

*In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) ................................ 20

*In re Prosser*, No. 3:06-BK-30009, 2022 WL 4392445 (Bankr. D.V.I. Aug. 26, 2022) ............. 18

*In re Radnor Holdings Corp.*, 564 B.R. 467 (D. Del. 2017) ...................................... 18

*In re Randall*, 358 B.R. 145 (Bankr. E.D. Pa. 2006) .............................................. 12

*In re Reagor-Dykes Motors, LP*, 613 B.R. 878 (Bankr. N.D. Tex. 2020) ................... 16

*In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148 (3d Cir. 2022) ..................... 22

*In re Summit Metals, Inc.*, 477 B.R. 484 (Bankr. D. Del. 2012) ................................ 18

*In re Wyman*, No. 12-32264-DOF, 2023 WL 2253142 (Bankr. E.D. Mich. Feb. 27, 2023) ........ 18

*Lewis v. Gov't of the D.C.*, 161 F. Supp. 3d 15 (D.D.C. 2015) ................................ 19

*Lynch v. Jacobs*, No. CV 20-182 (MN), 2021 WL 602439 (D. Del. Feb. 16, 2021) .................. 18

*Marine Midland Realty Credit Corp. v LLMD of Michigan, Inc.*, 821 F.Supp. 370
   (E.D.Pa.1993) ...................................................................................... 20

*Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993) ................................................. 15

*Matter of Met–L–Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988) ................................ 15

*Obeid v. Hogan*, 2016 WL 3356851 (Del. Ch. June 10, 2016) ................................ 21

*Ockley v. Radnor Twp.*, No. CV 24-4070, 2025 WL 2784225 (E.D. Pa. Sept. 30, 2025) ............ 26

*Phoenician Mediterranean Villa, LLC v. Swope (In re JBS Properties, LLC),*
   872 F.3d 138 (3d Cir. 2017)................................................................................. 18
*Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572 (Pa. Super. 2003) ............................. 25
*Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665,
   2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ...................................................... 28
*Quickturn Design Sys., Inc. v. Shapiro*, 721 A.2d 1281 (Del. 1998)........................... 21
*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) ............................................... 2, 12
*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998) ........................ 21
*Sims v. Viacom, Inc.*, 544 F. App'x 99 (3d Cir. 2013).................................................. 15
*Smith v. Dobin*, 852 F. App'x 49 (3d Cir. 2021) ...................................................... 16
*Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360 (M.D. Pa. 2020).......................... 16
*Voltarelli v. Immaculata Univ.*, 614 F. Supp. 3d 158 (E.D. Pa. 2022) ........................ 25
*W.G. Nichols, Inc. v. Ferguson,* 2003 WL 22158794 (E.D. Pa. Sept. 18, 2003)......................... 12
*Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412 (S.D.N.Y. 2021) ............................. 27

**Statutes and Rules**
11 U.S.C. § 323.............................................................................................................. 13
18 U.S.C. § 1836............................................................................................................ 26
18 U.S.C. § 1839............................................................................................................ 26
Fed. R. Civ. P. 12 .......................................................................................................... 11
Federal Rule of Bankruptcy Procedure 7012 .............................................................. 11
Federal Rule of Bankruptcy Procedure 9019 ................................................................ 3

Defendant William A. Homony, in his capacity as Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative," and collectively with Stream, the "Debtors"), by and through his undersigned counsel, submits this Memorandum of Law in support of his motion to dismiss the First Amended Adversary Complaint (the "FAC," Adv. D.I. 7) filed against him by Plaintiff Visual Semiconductor, Inc. ("VSI"). In support of his motion to dismiss, the Trustee respectfully states as follows:

## I.    <u>INTRODUCTION</u>

VSI's Complaint is the latest in a long series of attempts to derail the orderly progress of the Debtors' bankruptcy proceedings. VSI's claims are largely based on the erroneous assertion – which it has argued (and lost) repeatedly before this Court – that the Court-approved sale of Debtor assets to SeeCubic Inc. ("SeeCubic") includes the sale of intellectual property owned by Rembrandt 3D Holding Ltd. ("Rembrandt"). In fact, the Trustee did not sell or transfer any property owned by non-Debtors. This Court held as much in its sale approval order and opinion dated December 9, 2024, and January 8, 2025, respectively.

Accordingly, dismissal is warranted because VSI's challenges to the Court-approved sale transaction and the Trustee's conduct relating thereto are barred by *res judicata*. The judicially noticeable entries on the Debtors' bankruptcy docket establish that this Court approved the sale over the objections of VSI and Rembrandt, including objections relating to Rembrandt's intellectual property. VSI's Complaint is yet another impermissible collateral attack on the Bankruptcy Court's decisions and should be dismissed. Moreover, the fact that the challenged actions of the Trustee were approved by this Court in the face of vigorous opposition by VSI and

1

Rembrandt provides the Trustee with absolute immunity to VSI's repackaged claims in the instant action.

## II.   BACKGROUND

### A.   Prior Stream Bankruptcy Cases

The Trustee was appointed on January 5, 2024, for the reasons set forth by this Court in its Memorandum dated same (Bankr. D.I.[1] 548, the "Trustee Opinion").  This Court held, in relevant part, that, due to the gross mismanagement and lack of transparency under the Debtors' former (and VSI's current) CEO Mathu Rajan's leadership, (i) a Chapter 11 trustee must be appointed to administer the Debtors' cases, and (ii) Rajan was no longer authorized to act on behalf of the Debtors' estates.  *See, e.g.*, Trustee Opinion at pp. 31, 61.

This is the third Stream bankruptcy case.  The first was a Chapter 11 case initiated by Stream on February 24, 2021, and docketed at *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case").  The Delaware Bankruptcy Court dismissed the Delaware Voluntary Bankruptcy Case on May 17, 2021, as having been filed in bad faith.  *See* Trustee Opinion at p. 6.

Six days later, on May 23, 2021, Rembrandt and two other purported creditors filed an involuntary Chapter 7 case, docketed at *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case").  *Id.*  On the same day,  Stream, Rajan, Rajan's brother Raja, and Rembrandt executed a collusive settlement agreement (the "Rembrandt-Stream Agreement").  The timing of the execution of the Rembrandt Agreement and the filing of the

---

[1] References to "Bankr. D.I. __" herein refer to public docket filings in E.D. Pa. Bankr. No. 23-10763.  As matters of public record in the underlying bankruptcy proceeding, the Court may consider such filings in ruling on the Trustee's motion to dismiss.  *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Delaware Involuntary Bankruptcy Case (the same day) makes it clear that the Rembrandt Agreement was executed in a ruse to manufacture creditor status to Rembrandt (so that Rembrandt could act as one of the three purported "petitioning creditors" for purposes of the involuntary bankruptcy filing). Not fooled, the Delaware Bankruptcy Court again dismissed the filing as having been made in bad faith. *See* Trustee Opinion at p. 6.

### B.    The 363 Sale

On May 6, 2024, the Trustee filed a Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Hawk 9019 Motion," Bankr. D.I. 630) to approve a settlement with the Debtors' secured creditor Hawk Investment Holdings Limited ("Hawk"), which had an action pending against the Debtors in the Delaware Court of Chancery. The settlement, wherein Hawk was collateral agent for the secured creditors, resolved several disputes between the parties, provided a carve out of at least $9 million for the Debtors' estates, and provided a mechanism for the Debtors' assets to be exposed to a sale process, whereby the true value of the assets could be assessed by exposing them to the market and at which SeeCubic would be allowed to credit bid (the "Hawk Settlement").

Both VSI and Rembrandt vigorously opposed the Hawk 9019 Motion. *See, e.g.*, Bankr. D.I. 642 (VSI's objection) and Bankr. D.I. 643 (Rembrandt's objection), with VSI arguing, inter alia, that it "present[ed] viable proposals that would be more beneficial to the Estate than the Trustee's Settlement," and Rembrandt arguing, *inter alia*, that the Hawk Settlement "will violate both the Philips and Rembrandt licenses" and that the Trustee's proposed compromise should not go forward due to the Rembrandt Agreement. This Court conducted an evidentiary hearing on the Hawk 9019 Motion on June 5, 2024, during which the Trustee presented evidence that the Hawk

Settlement satisfied the *Martin*[2] factors, established the facts and reasoning that had informed his decision, and was cross-examined by VSI and Rembrandt. *See* Bankr. D.I. 670 (transcript of 6/5/24 hearing).

Ultimately, this Court approved the Hawk Settlement (Bankr. D.I. 653, the "Hawk 9019 Order") over the objections of VSI and Rembrandt, holding, *inter alia*, that the "Settlement represents a valid exercise of the Trustee's business judgment, having been informed by extensive research, investigation, and negotiation by the Trustee" and that "[t]he Settlement and Agreement are in the best interest of the Debtors' estates and all of the Debtors' stakeholders." *Id.* at ¶¶ 4, 7. Rembrandt filed a notice of appeal of the Hawk 9019 Order (Bankr. D.I. 685), with the appeal currently pending in the District Court (E.D. Pa. No. 24-cv-2727).

Pursuant to the Court-approved Hawk Settlement the Trustee negotiated an arms'-length asset purchase agreement with SeeCubic (the "Stalking Horse APA") and, on September 30, 2024, the Trustee filed a motion with this Court seeking authorization and approval under Section 363 of the Bankruptcy Code of the Stalking Horse APA and the associated Bid Procedures in connection with the sale of substantially all of the Debtors' assets on an "as is," "where is" basis, without any warranty of any kind, express or implied (the "Sale Motion," Bankr. D.I. 750).[3] The Sale Motion explicitly stated that the Trustee does not intend to sell or assign the Rembrandt License as a part of the Stalking Horse APA. *Id.* at ¶ 27. Likewise, on November 11, 2024, the Trustee filed a proposed Asset Purchase Agreement, which made it abundantly clear that the following were to be deemed "Excluded Assets" which were not part of the Debtor assets the Trustee sought to sell:

---

[2] *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).
[3] The Trustee's sale of the Debtors' assets is referred to herein as the "363 Sale."

4

(j) any grant of rights or license by Rembrandt 3D Holding Ltd. ("Rembrandt") or affiliates to Stream, including but not limited to the Rembrandt Grant of Rights in the Settlement Agreement and Mutual Release between Rembrandt and Stream dated May 23, 2021, any amendment thereto, and the Licensing Covenant between Rembrandt, Stream, and Visual Semiconductor, Inc. dated August 14, 2023, each to the extent valid, existing and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction;

(k) any physical assets that contain or include Rembrandt Intellectual Property, to the extent valid, existing, and enforceable as determined by a final, non-appealable order from a court of competent jurisdiction . . . .

Bankr. D.I. 795-1 at § 2.2.

As with the Hawk 9019 Motion, the Sale Motion was vigorously opposed by VSI and Rembrandt. *See, e.g.*, Bankr. D.I. 788 (VSI's objection to Sale Motion); Bankr. D.I. 789 (Rembrandt's objection to Sale Motion). Both VSI and Rembrandt argued that the proposed sale would include intellectual property belonging to Rembrandt and that the Trustee had failed to remove such intellectual property from the assets available for sale – the same allegations that form the basis for VSI's instant FAC. *See* Bankr. D.I. 788 at ¶ 62 ("The data room is also completely silent on the issue of intellectual property claims by Rembrandt."); Bankr. D.I. 789 at ¶ 1 ("Rembrandt requests that the [Sale] Motion be denied and Rembrandt further seeks an order to prevent the 363 Sale and that [sic] the chapter 11 trustee . . . not make any new proposal to sell assets of the Debtors until the Trustee has properly determined what are the assets of the Debtors and more specifically, has removed the technology that belongs to other third party entities from the technology the debtors are proposing to sell").

Thereafter, on November 13, 2024, this Court held a hearing and approved the Bidding Procedures and the Stalking Horse APA with SeeCubic. *See* Bankr. D.I. 807 (transcript of 11/13/24 hearing). The order approving the Bidding Procedures was entered on November 20,

2024 (Bankr. D.I. 811, the "Bidding Procedures Order"). The Bidding Procedures Order set a deadline of November 22, 2024, for the filing of objections specifically to the sale of the Debtor's Assets and a deadline of November 29, 2024, for the filing of responses to any objections. VSI's objection criticized SeeCubic and raised the specter of Rembrandt's intellectual property claims. *See* Bankr. D.I. 815. Rembrandt's objection attempted to reargue the merits of the Hawk Settlement. *See* Bankr. D.I. 816. On December 4, 2024, this Court held yet another hearing concerning the sale of the Debtors' assets. *See* Bankr. D.I. 878 (transcript of 12/4/24 hearing).

On December 9, 2024 – after consideration of Rembrandt's evidence and arguments at numerous hearings and in voluminous written submissions – this Court entered an order (Bankr. D.I. 876, the "Sale Approval Order") which detailed the Trustee's successful efforts to marshal and sell Debtor assets for the benefit of creditors and approved the sale of those assets to SeeCubic pursuant to the APA. In the Sale Approval Order, the Bankruptcy Court found, *inter alia*, that:

- The Trustee "afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Assets," *id.* at ¶ H;

- "The Trustee and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner and at arms' length," *id.* at ¶ J;

- "The sale process conducted by the Trustee pursuant to the Bidding Procedures Order and the Bidding Procedures resulted in the highest or otherwise best value for the Assets for the Trustee and the Debtors' estates, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result," *id.* at ¶ L;

- "The Trustee has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of its obligations under the Asset Purchase Agreement. The consummation of the Sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their creditors, their estates, and other parties in interest," *id.* at ¶ M;

- "the Trustee, on behalf of each Debtor, has all of the power and authority necessary to (i) execute and deliver the Asset Purchase Agreement and all other documents to

6

consummate the Sale, and (ii) consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Trustee to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement. The Assets constitute property of the Debtors' respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates," *id.* at ¶ AA; and

- "The Trustee has demonstrated a sufficient basis and compelling circumstances warranting his to (i) entry into the Asset Purchase Agreement, and (ii) sale of the Assets, and such actions are an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include that (i) the Asset Purchase Agreement constitutes the highest and best offer for the Assets; (ii) the Asset Purchase Agreement presents the best opportunity to maximize and realize the value of the Assets for the benefit of the Debtors, their estates, and their creditors; and (iii) unless the Sale contemplated by the Asset Purchase Agreement is concluded expeditiously, creditor recoveries are likely to be adversely affected," *id.* at ¶ BB.

The Sale Approval Order "authorized, empowered, and directed [the Trustee] to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Sale in accordance with the terms and conditions set forth in the Asset Purchase Agreement, Transaction Documents and this Sale Order," and made clear that "[a]ll persons, entities, and interested parties are prohibited and enjoined from taking any action that would in any way adversely affect or interfere with, or which would be inconsistent with, the ability of the Trustee to transfer the Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement, the other Transaction Documents, and this Sale Order."[4]  *Id.* at ¶¶ 5, 7.  VSI and Rembrandt filed a joint

---

[4] While barring interference with the Trustee, the APA and Sale Approval Order expressly preserve Rembrandt's right to pursue any IP-related claims it purports to have against the Buyer. *See, e.g.,* Sale Approval Order at Ex. 1, § 2.3, (providing that "the Buyer . . . assumes any liability to the extent that there is any claim or cause of action alleging that any Intellectual Property of any third party, including but not limited to the Rembrandt Intellectual Property, has been improperly transferred or sold to the Buyer . . . as part of the Transferred Assets at Closing"); Sale Approval Opinion at 18 ("to the extent Rembrandt believes SeeCubic's use of the Assets after closing violates its rights, litigation against the purchaser is not barred").

notice of appeal of the Sale Approval Order (Bankr. D.I. 877), with the appeal currently pending

in the District Court (E.D. Pa. No. 24-6617).

On January 8, 2025, this Court issued an Opinion (Bankr. D.I. 916, the "Sale Approval

Opinion") pursuant to Local Bankruptcy Rule 8003-1 in support of its Sale Approval Order,

holding in relevant part:

- "the Trustee . . . met with VSI and Mr. Rajan to entertain any proposals to buy the Assets or restructure the Debtors' operations.  VSI did not, however, present an actionable proposal backed by any financial commitment," *id.* at pp. 16-17;

- "...Rembrandt focused [at the December 4, 2024 Sale Hearing] on what Assets were being sold and whether they included Rembrandt's intellectual property.  The APA, however, made clear that such intellectual property was an Excluded Asset. As the Court observed at the Sale Hearing multiple times, the Assets to be sold 'are what they are,' and were set forth in the APA and its schedules.  SeeCubic agreed to purchase those Assets on an 'as is, where is' basis, and to the extent Rembrandt believes SeeCubic's use of the Assets after closing violates its rights, litigation against the purchaser is not barred," *id.* at pp. 17-18;

- "Nothing in the Blumenthal Declaration [submitted by Rembrandt at the Sale Hearing] undermines the Sale process. . . . Mr. Blumenthal does reiterate Rembrandt's argument that Stream's UltraD technology is dependent on Rembrandt's and Philips' technology, and that because Stream's licenses from Rembrandt and Philips are not transferable, SeeCubic's failure to obtain new licenses will render the Assets worthless. . . . The Court, however, dispensed with this argument at the Sale Hearing, finding that the Sale, with the exception of a piece of bonding equipment located in China, is a deal for Technovative's equity stake in certain non-debtor subsidiaries, and to the extent Rembrandt believes that the sale violates its intellectual property rights, its litigation claims [against the Buyer] are preserved," *id.* at p. 19;

- The Trustee's marketing process was reasonable in view of the facts, among others, that SSG contacted approximately 550 potential purchasers in connection with the solicitation process approved by the Bankruptcy Court in its order approving the Bidding Procedures Motion, *id.* at 18-19; and

- "Finally, the Court finds that the Assets may be sold free and clear of any interests of third parties pursuant to § 363(f). Rembrandt asserts it (and Philips) has intellectual property that may not be transferred to SeeCubic. To the extent those rights exist, they are excluded under the APA. To the extent Rembrandt is arguing

that Technovative's *equity interests* in non-debtor subsidiaries may not be sold because those subsidiaries are in possession of the intellectual property, the Court finds that this argument lacks merit," *id.* at p. 21.

As this Court discussed, these meritless objections had been raised for the "second or third time[]" in response to the Sale Motion. *See id.* at pp. 4, 7-10 (discussing objections filed by VSI and Rembrandt to Hawk 9019 Motion and Bidding Procedures Motion, which included, *inter alia*, that the property to be sold included Rembrandt IP and that the Trustee had not "removed" those assets); *id.* at pp. 12-13 (discussing objections filed by Rembrandt and VSI to Sale Motion).

### C.    The Trustee Settles Disputes With Rembrandt

On July 15, 2025, the Trustee filed a motion seeking, inter alia, approval pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure of a compromise with Rembrandt (the "Rembrandt 9019 Motion," Bankr. D.I. 1040).  The Rembrandt 9019 Motion seeks approval of a settlement with Rembrandt (the "Rembrandt-Trustee Settlement") which reduces over $1.2 billion of Rembrandt's asserted claims to a $1 million allowed unsecured claim and resolves all disputes with Rembrandt (including a currently pending lawsuit in the Eastern District of Pennsylvania which seeks substantial damages and which would cost millions to litigate) for a $1.25 million payment, for which SeeCubic, Inc. ("SeeCubic") is obligated to indemnify the Trustee, and of which only $100,000.00 would come from estate funds. *See id.*

On August 7, 2025, VSI filed an opposition to the Rembrandt 9019 Motion, arguing that "the Settlement would result in Rembrandt's breach of contract with VSI with regard to a Litigation Funding and Confirmation Agreement ("LFCA"), which VSI and Rembrandt . . . entered into in 2024 . . . . Key rights afforded to VSI pursuant to the LFCA and its amendments included absolute pre-approval of any settlement Rembrandt might wish to consider, and the right to

immediate ownership of or access to Stream's Ultra-D technology in the event that Rembrandt succeeded in obtaining such ownership or access."  Bankr. D.I. 1053 at ¶ 3.

On September 8, 2025, this Court held a full-day hearing on the Rembrandt 9019 Motion, *see* Bankr. D.I. 1096, and on September 29, 2025, VSI filed a lengthy post-trial brief repeating its argument that the LFCA forecloses Court approval of the Rembrandt-Trustee Settlement.  Bankr. D.I. 1102.  The Rembrandt 9019 Motion remains pending before this Court, with supplemental argument currently scheduled for October 15, 2025.

### D.    VSI's First Amended Complaint

VSI initiated the instant adversary proceeding on September 3, 2025, by filing an incomplete complaint, which contained internal comments indicating it was in a draft form, set forth no causes of action, and abruptly ended without requesting any relief.  Adv. D.I. 1.  On September 9, 2025, VSI filed the instant FAC against the Trustee, Rembrandt, Rembrandt's CEO Stephen Blumenthal, the Stream Debtor, and various parties associated with SeeCubic, asserting claims for breach of contract, unjust enrichment, promissory estoppel, conversion, violation of the Defend Trade Secrets Act ("DTSA"), conspiracy/aiding and abetting, and seeking injunctive relief and a declaratory judgment.  Adv. D.I. 7.

In the FAC, VSI repeats its arguments in opposition to the Rembrandt-Trustee Settlement, namely that the LFCA provides it with the requisite standing to assert Rembrandt's alleged intellectual property rights and asserts that these rights were violated by the Trustee's actions in facilitating and entering into the 363 Sale on behalf of the Debtors' estates.  *See, e.g.*, FAC at ¶¶ 19 ("With the aid of his advisors, Homony orchestrated that § 363 sale of the assets of Stream and Technovative."); 99-108 (Section heading: "Homony Ignores TRO Violations and Charts a Course to Sell the Debtors' Assets Despite IP claims from Rembrandt"); 109-118 (criticizing Homony's

decision to pursue the § 363 Sale rather than entertain purported reorganization funding from VSI);

135 ("Homony provided no evidence, and appears to have taken no action to ensure, that

Rembrandt's trade secrets and other intellectual property was not transferred to an unlicensed

buyer in violation of Rembrandt's IP rights."); 136 (alleging that "Homony was grossly negligent

and acted with reckless disregard" with respect to the § 363 Sale); 154 (criticizing prior "judicial

errors," including Judge Chan's presiding over a "Court-approved whitewash of title" in the § 363

Sale).

VSI's complaints about the Trustee and the 363 Sale are barred or otherwise mooted by

the Bankruptcy Court's Sale Approval Order – which expressly approves and directs the Trustee

to consummate the sale, and as to which VSI and Rembrandt's vigorous objections were overruled

by this Court. The fundamental allegation underlying the Complaint – *i.e.*, that Homony infringed

on Rembrandt's intellectual property rights – is plainly foreclosed by the Sale Approval Order.

*See* Bankr. D.I. 876, Sale Approval Order at ¶ AA ("The Assets constitute property of the Debtors'

respective estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is

presently vested in the Debtors' estates."). As such, this Court should recognize the FAC as an

impermissible attempt to circumvent both the Sale Approval Order and the bankruptcy appellate

process.

## III.    APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12 provides authority for the dismissal of cases and is made

applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). Specifically,

Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(1), (6).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *see also, e.g., Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018) (documents filed on bankruptcy dockets are matters of public record). Res judicata and collateral estoppel may be raised upon a Rule 12(b)(6) motion if the facts are admitted, uncontroverted, or conclusively established so that nothing further can be developed by a trial of the issue. *In re Randall*, 358 B.R. 145, 163 (Bankr. E.D. Pa. 2006); *W.G. Nichols, Inc. v. Ferguson*, 2003 WL 22158794, at *2 (E.D. Pa. Sept. 18, 2003); *see also Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that, in evaluating a motion to dismiss, the court "may consider . . . items appearing in the record of the case" (quotation marks and citation omitted)).

## IV.    ARGUMENT

### A.    VSI's Claims Against The Trustee Are Barred Or Otherwise Mooted By This Court's Sale Approval Order

VSI's claims against the Trustee (and by extension the Stream Debtor)[5] are based on his alleged actions in connection with the marketing and sale of Debtor assets as part of the 363 Sale to SeeCubic. *See, e.g.*, FAC at ¶¶ 19 ("With the aid of his advisors, Homony orchestrated that § 363 sale of the assets of Stream and Technovative."); 23 ("Rembrandt IP was not removed or returned by Homony before he sold Stream's assets to SeeCubic"); 24 ("Ultimately, the Court approved the § 363 Sale . . . . There was no acknowledgment by the Court that Homony had no legal right to sell assets that did not belong to the estate . . . ."); 25 (criticizing "Homony['s] commit[ment] to conducting a § 363 Sale of Stream's assets despite infringement warnings from Rembrandt"); 99-108 (Section heading: "Homony Ignores TRO Violations and Charts a Course to Sell the Debtors' Assets Despite IP claims from Rembrandt"); 109-118 (criticizing Homony's decision to pursue the § 363 Sale rather than entertain purported reorganization funding from VSI); 129 ("By allowing Homony to sell technology assets that the Debtors did not own, and by making the assertion that Rembrandt could simply pursue litigation later, Judge Chan aided and abetted the infringement committed by Homony and SeeCubic."); 131 ("Homony made no effort to inspect the server, engage IP experts to evaluate the computer code stored thereon, or confirm that the

---

[5] VSI's FAC purports to also bring claims against Stream. "The trustee, as representative of the estate, has the exclusive capacity to sue and be sued on behalf of the estate, and is charged by law with representing the interest of the estate against third parties claiming adversely to it." *In re Flanagan*, 503 F.3d 171, 179 (2d Cir. 2007) (citing 3 Collier on Bankruptcy ¶ 323.03, .03[1], at 323–7 to –9 (Alan N. Resnick et al. eds., rev. 15th ed.2007)); *see also* 11 U.S.C. § 323. Given the Trustee's exclusive capacity to be sued on behalf of the estate – and the fact that the FAC does not seek relief for any acts undertaken by Stream prior to appointment of the Trustee – the following arguments apply with equal force to Stream, and the claims against it should be dismissed as well.

intellectual property of Rembrandt and Philips were not being transferred in the § 363 Sale."); 134 ("The § 363 Sale was consummated on January 3, 2025 by SeeCubic, which paid the carve-out fees to the Debtors as required by the Sale Order.  Accepting payment for the transfer of Rembrandt's trade secrets is a violation of the DTSA."); 135 ("Homony provided no evidence, and appears to have taken no action to ensure, that Rembrandt's trade secrets and other intellectual property was not transferred to an unlicensed buyer in violation of Rembrandt's IP rights."); 136 (alleging that "Homony was grossly negligent and acted with reckless disregard" with respect to the § 363 Sale); 140 (criticizing the carve-out provided by the § 363 Sale); 149 (criticizing the "foundation for the § 363 Sale"); 153 ("Homony ignored any actions that would threaten the success of his plotted § 363 Sale."); 154 (criticizing prior "judicial errors," including Judge Chan's presiding over a "Court-approved whitewash of title" in the § 363 Sale).

Indeed, in a distinct section heading entitled "Homony's Actions Have Damaged the Debtor's Estates," VSI makes it abundantly clear that its claims arise out of the Court-approved Section 363 Sale:

> Homony claimed that the SeeCubic 9019 Settlement and subsequent § 363 Sale were in the best interests of the Debtors.  He claimed that the settlement would reduce litigation costs and effort, resulting in a greater recovery for all parties in interest.  Having executed the SeeCubic 9019 Settlement, he dismissed any attempt by VSI to provide funds and settlement terms through a plan of reorganization that would have truly been in the best interests of the Debtors, paying all creditors their allowed claims in full (or more).  Instead, the amount of litigation involving the Debtors has exploded, costing Stream what will likely be the lion's share of the measly carve-out provided by SeeCubic in the § 363 Sale.  Any experienced trustee or judge acting in mediation would have recognized the value of the VSI proposition and explored options with sincere good faith.

> Homony's failure to do so was yet another breach of his fiduciary
> duties.

FAC at ¶ 161.

Based on the foregoing, it is clear that VSI's claims are just repackaged objections to the 363 Sale (which both VSI and Rembrandt already raised and lost before this Court) and are at odds with this Court's Hawk 9019 Order (Bankr. D.I. 653) and Sale Approval Order (Bankr. D.I. 876).

Res judicata, also known as claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sims v. Viacom, Inc.*, 544 F. App'x 99, 101 (3d Cir. 2013) (citation omitted). The following requirements ordinarily must be satisfied for res judicata to apply: "(1) a final judgment on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Id.* "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

The first and second factors are clearly satisfied here. With respect to the first factor, it is well-established that orders approving bankruptcy sales and compromises are final orders for res judicata purposes. *See, e.g.*, *In re Cambrian Holding Co., Inc.*, 110 F.4th 889, 892 (6th Cir. 2024) ("Courts have treated a bankruptcy court's order approving a sale of the debtor's property under § 363 as a 'final' order. This treatment has meant that a disgruntled party can immediately appeal a sale order. And it has meant that a sale order can trigger the doctrines of issue and claim preclusion in other cases.") (citations omitted); *Matter of Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) ("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for *res judicata* purposes."); *Matter of Met–L–Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988) (holding that bankruptcy court's order

15

confirming judicial sale of a debtor's estate was a final order); *In re Fundamental Long Term Care, Inc.*, 628 B.R. 344, 346 (Bankr. M.D. Fla. 2021), *aff'd* 2023 WL 2139226 (M.D. Fla. Feb. 21, 2023) ("[A] final order approving a bankruptcy settlement under Fed. R. Bankr. P. 9019 binds creditors and has preclusive effect on all matters that were or should have been raised in the proceeding."); *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 887-88 (Bankr. N.D. Tex. 2020) ("An order approving a settlement under Rule 9019 has res judicata effect as a final order.").[6]

The second factor is similarly clearly established by VSI's active opposition to the Hawk 9019 Motion and the Sale Motion.  *See, e.g.*, *Smith v. Dobin*, 852 F. App'x 49, 51-52 (3d Cir. 2021) (affirming the district court's ruling that claims were barred by claim preclusion, and concluding that the plaintiff also failed to state a claim on which relief can be granted when the plaintiff unsuccessfully challenged the purchase of her former house in the bankruptcy court, because the plaintiff "either litigated or could have litigated her allegations of fraud regarding [the buyer] in that proceeding"); *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 888 (Bankr. N.D. Tex. 2020) (holding that a party in interest who receives notice of and has opportunity to object to a Rule 9019 motion is bound by a resulting order for purposes of res judicata).  VSI objected to the Trustee's Hawk 9019 Motion (Bankr. D.I. 642) and objected to the Trustee's Sale Motion (Bankr. D.I. 788), raising substantively identical issues – including arguments based on alleged infringement of Rembrandt's intellectual property and VSI's supposedly superior proposal – to

---

[6] VSI has filed several appeals relating to the 9019 Order and Sale Approval Order, but such appeals do not affect the finality of the orders for res judicata purposes.  *See, e.g., In re Gay*, 2024 WL 2947614, at *12 n.18 (Bankr. W.D. Pa. June 11, 2024) (collecting cases holding that "courts have found the doctrines [of res judicata and collateral estoppel] applicable even in instances where the final order being enforced or applied is the subject of appeal"); *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 418 (M.D. Pa. 2020) ("The pendency of an appeal does not affect the potential for *res judicata* flowing from an otherwise-valid judgment.") (quotation marks and citation omitted).

those which form the basis of VSI's claims in the instant Complaint.  *See* Bankr. D.I. 916, Sale

Approval Opinion, at pp. 4, 7-10, 12-14 (summarizing objections to 9019 Motion, Bidding

Procedures Motion, and Sale Motion, and hearings held on same).

The final res judicata factor – a subsequent suit based on the same cause of action – is also

met here.  While courts within the Third Circuit have recognized that application of the traditional

res judicata analysis is "confound[ed]" by the "depth and breadth of a bankruptcy proceeding," *In*

*re EXDS, Inc.*, 316 B.R. 817, 822 (Bankr. D. Del. 2004), the relief requested by VSI is clearly such

that the "factual underpinnings, theory of the case, and relief sought . . . are so close to a claim

actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at

the same time in the bankruptcy forum."  *E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330, 337

(3d Cir. 2000).

Indeed, the purported wrongdoing raised in the Complaint – i.e., VSI's allegation that the

Trustee sought to sell property belonging not to the Debtors, but instead to Rembrandt – is identical

to the grounds raised in VSI and Rembrandt's objections to the Trustee's Hawk 9019 Motion and

Sale Motion.  The Bankruptcy Court's 9019 Order and Sale Approval Order fully and finally

disposed of Rembrandt's claims that the Trustee was improperly seeking to sell property belonging

to Rembrandt, and VSI's claim that the Trustee has infringed Rembrandt's intellectual property

rights via the Sale is accordingly barred by the doctrine of res judicata.  *See, e.g.*, Bankr. D.I. 876,

Sale Approval Order at ¶ AA ("The Assets constitute property of the Debtors' respective estates

within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested

in the Debtors' estates."); Bankr. D.I. 916, Sale Approval Opinion, at pp. 17-21.[7]

---

[7] For the same reason, VSI's claims against the Trustee are also barred by collateral estoppel (also
known as issue preclusion), which is narrower than claim preclusion in that claim preclusion bars
all issues that were or could have been raised in the prior proceeding, while issue preclusion bars

**B.      The Trustee Was Acting Pursuant To The Bankruptcy Court's Orders And Is
Thus Immune From Suit**

"[W]hen a trustee is acting pursuant to a court order, . . . the trustee is protected by absolute

or derived immunity."  *In re Wyman*, No. 12-32264-DOF, 2023 WL 2253142, at *6 (Bankr. E.D.

Mich. Feb. 27, 2023) (citing *Phoenician Mediterranean Villa, LLC v. Swope (In re JBS Properties,*

*LLC)*, 872 F.3d 138, 142 n.3 (3d Cir. 2017)); *Lynch v. Jacobs*, No. CV 20-182 (MN), 2021 WL

602439, at *9 (D. Del. Feb. 16, 2021) ("Given that the Trustee was acting in compliance with and

pursuant to the Delaware Bankruptcy Court's Modified Confirmation Order, the Bankruptcy Court

correctly determined that the Trustee is immune from any suit brought by Appellants."); *In re*

*Prosser*, No. 3:06-BK-30009, 2022 WL 4392445, at *6 (Bankr. D.V.I. Aug. 26, 2022), aff'd, No.

3:06-BK-30009, 2024 WL 3412639 (D.V.I. July 15, 2024) ("Judicial immunity is a defense

available to bankruptcy trustees and professionals when they act within the scope of their authority

and pursuant to court order."); *In re Summit Metals, Inc.*, 477 B.R. 484, 501 (Bankr. D. Del. 2012)

("Because [the] Complaint is composed almost entirely of claims stemming from official, Court-

approved or Court-ordered actions, the factual allegations in the Complaint do not support a right

to relief against the Defendants.").

As set forth in detail above, VSI's claims against the Trustee are based on alleged actions

in connection with the sale of Debtor assets as part of the 363 Sale to SeeCubic, which occurred

pursuant to explicit Orders of this Court, i.e., the 9019 Order and Sale Approval Order.  The fact

that the Bankruptcy Court approved the challenged actions of the Trustee in the face of vigorous

opposition by VSI and others provides the Defendants with absolute immunity to VSI's

repackaged claims in the instant action.

---

only those issues actually raised and decided.  *See, e.g.*, *In re Radnor Holdings Corp.*, 564 B.R.
467, 483 (D. Del. 2017).

C.      **VSI Fails to State Any Claims For Relief Against the Trustee**

VSI's FAC brings claims against the Trustee for a declaratory judgment (Count I), an injunction (Count II), promissory estoppel (Count V), conversion (Count VI), violation of the Defend Trade Secrets Act ("DTSA") (Count VII), and "Conspiracy/Aiding and Abetting" (Count VIII). As set forth above, VSI's FAC and the claims contained therein are fundamentally based on the argument that the Court-approved sale of the Debtors' assets to SeeCubic violated Rembrandt's intellectual property rights, and the claims are thus barred by the doctrine of res judicata and absolute immunity. Even if they were not so barred, the claims are without merit for the following reasons.

1.      **Declaratory Judgment (Count I) and Injunction (Count II)**

VSI's first and second counts seek a declaratory judgment and injunction against all defendants, including the Trustee. *See* FAC at ¶¶ 163-170. "Requests for declaratory judgments and injunctions are not freestanding causes of action but rather invoke forms of relief to redress the other claims asserted by Plaintiff," and these counts should thus be dismissed. *See Lewis v. Gov't of the D.C.*, 161 F. Supp. 3d 15, 23 (D.D.C. 2015) (quotation marks, alteration marks, and citation omitted). Moreover, VSI fails to identify exactly what it wishes this Court to declare or enjoin, but alleges that "Rembrandt and Homony disregarded VSI's pre-approval rights in settlement negotiations, and that Homony transferred assets subject to third-party IP, establishing an actual controversy requiring declaratory judgment" and that, "[a]s described in the plan text of LFCA Amendment #2, Rembrandt cannot even prepose, let alone enter into, a settlement agreement without VSI consent." *Id.* at ¶¶ 166, 168.

With respect to the Trustee's alleged unlawful transfer of "assets subject to third-party IP," as set forth in detail above, the only transfer of assets overseen by the Trustee was the subject of

this Court's Sale Order, and any declaratory judgment or injunction would be both res judicata by virtue of the sale order and moot given that the sale has already been consummated.

The issue of the Trustee's supposed disregard of "VSI's pre-approval rights in settlement negotiations" has been extensively briefed by VSI and the Trustee in the context of the Trustee's motion for approval of a settlement with Rembrandt. As set forth in detail in the Trustee's briefing in connection with the Rembrandt 9019 Motion, even if the LFCA agreement is enforceable between VSI and Rembrandt, the provisions thereof do not bind the Trustee and should not impact a settlement reached between Rembrandt and the Trustee. *See, e.g., In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998) ("To the extent that the Creditors Committee argues that Toy Biz and the Secured Lenders have breached an agreement with them, the issue is not one for the court to resolve at this time. The parties reached that agreement among themselves, and the terms of the agreement are irrelevant to the question of whether the court should approve the Settlement.").

Specifically, VSI argues that LFCA provisions which state that "Rembrandt agrees that it shall pursue litigation as directed by VSI" and that "Rembrandt shall not propose or agree to any settlement . . . without VSI's prior written consent and approval" operated to deprive Rembrandt of authority to enter into the Settlement and that, as a result, this Court should enter an injunction and a declaratory judgment. Both contentions are entirely without merit.

"Bankruptcy favors compromise. 'Settlement agreements are contracts between the parties and [state law] contract principles are generally applicable to their construction.'" *In re JDN Props. at Florham Park, LLC*, No. 10-11697 (VFP), 2015 WL 5168600, at *9 (Bankr. D.N.J. Aug. 31, 2015) (citation omitted; quoting *Marine Midland Realty Credit Corp. v LLMD of Michigan, Inc.*, 821 F.Supp. 370, 373 (E.D.Pa.1993)). As a general matter, a contract between an entity and

an otherwise unrelated third party cannot eliminate that entity's actual authority to settle litigation,

as such authority can only come from the governing legal framework and the entity's

organizational documents.  In the case of a corporation,

> Beyond the board of directors, the corporation may validly act
> through its directors and officers as authorized corporate agents.  In
> general, an officer's powers stem from the organic law of the
> corporation, or a board delegation of authority which may be
> express or implied.  Express authority to act on behalf of the
> corporation is usually manifested through a statute, the certificate of
> corporation, the by-laws, or a board or shareholder action.  Implied
> actual authority, which is express authority circumstantially proved,
> may be found through evidence as to the manner in which the
> business has operated in the past, the facts attending the transaction
> in question, circumstantial evidence of board declarations
> surrounding the given transaction, or the habitual usage or course of
> dealing common to the company.

*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 127–28 (3d Cir. 1998) (internal citations

omitted); *cf. also Quickturn Design Sys., Inc. v. Shapiro*, 721 A.2d 1281, 1291 (Del. 1998) ("One

of the most basic tenets of Delaware corporate law is that the board of directors has the ultimate

responsibility for managing the business and affairs of a corporation. . . . [A]ny limitation on the

board's authority be set out in the certificate of incorporation.").  It follows that a corporation's

board has exclusive authority over major decisions involving litigation assets, including the

decision to settle its claims and dispose of those assets.  *See Obeid v. Hogan*, 2016 WL 3356851,

at *14-15 (Del. Ch. June 10, 2016) (noting that the board has ultimately control over litigation

assets, including the authority to "approve settlements," and can only delegate that authority to a

committee composed of directors).  Accordingly, while the terms of the LFCA may, if enforceable,[8]

---

[8] The LFCA, which purports to give VSI control over the prosecution of litigation prosecuted by
Rembrandt in exchange for the financing of such litigation, is likely an invalid agreement pursuant
to the doctrines of champerty and maintenance.  *See, e.g., Hudak v. Apostolate for Fam.
Consecration, Inc.*, No. 2:22-CV-173, 2023 WL 5670713, at *8 (W.D. Pa. July 26, 2023) ("A

form the basis for a breach of contract action between VSI and Rembrandt, they cannot deprive Rembrandt of the authority to settle litigation on its own behalf.

Moreover, even if Rembrandt could somehow delegate exclusive settlement authority to VSI, the Rembrandt Settlement Agreement would still be a valid and enforceable agreement as between Rembrandt and the Trustee under well-settled principles of apparent authority. "Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Apparent authority thus flows from acts of the principal but is viewed from the lens of what the other party should reasonably know." *Brennan v. FSD Pharma Inc.*, No. CV 21-3771, 2021 WL 5882115, at *5 (E.D. Pa. Dec. 13, 2021) (citations and quotation marks omitted). Under Pennsylvania law, "an agent has apparent authority if the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. [A]pparent authority may be established with a showing of: (1) limited authority given to the agent by the principal; and (2) conduct of the agent which demonstrates to the third-party the agent's apparent authority to bind the principal. . . . Pennsylvania law tilts in favor of finding that an agent has apparent authority. Third parties dealing with an agent need only exercise reasonable diligence to ascertain the agent's authority. Moreover, an admitted agent is presumed to be acting within the scope of his authority where the act is legal and the third party has no notice of the limitations on the agent's authority." *In re Rotavirus Vaccines Antitrust Litig.*, 30 F.4th 148, 157 (3d Cir. 2022) (internal citations, quotation marks, and alteration marks omitted).

---

champertous agreement is one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered. The activity of champerty has long been considered repugnant to public policy against profiteering and speculating in litigation and grounds for denying the aid of the court." (quotation marks and citations omitted)).

Here, the underlying facts concerning negotiation and execution of the Rembrandt Settlement Agreement – which are matters of public record in the context of the Rembrandt 9019 Motion – are undisputed. The agreement was negotiated and agreed to in principle by Christopher Michaels, who is both counsel for and Chief Financial Officer of Rembrandt. *See* Bankr. D.I. 1057, Michaels Dec. at ¶¶ 1, 2, 17-18. It was then reduced to a formal written agreement, which was executed by Steven Blumenthal, Rembrandt's Chief Executive Officer, and in which Rembrandt expressly represented and warranted that it:

> (a) . . . and the signatory hereto has the power and authority to execute, deliver and perform this Agreement ; (b) . . . has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered . . . and constitutes the legal, valid, and binding obligations of [Rembrandt], enforceable against it in accordance with their respective terms; (d) [Rembrandt's] execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of [Rembrandt] . . . .

Bankr. D.I. 1040-6, Rembrandt Settlement Agreement at ¶ 12.

At the time he negotiated and executed the Rembrandt Settlement Agreement, the Trustee was entirely unaware of the Rembrandt-VSI LFCA and any purported limitation on Rembrandt's settlement authority contained therein. *See* Bankr. D.I. 1096, Tr. at 62:17-20 (Trustee testifies that "I'm not a party to that agreement. I had no knowledge of that agreement. When I executed the settlement with Rembrandt, I believed Rembrandt had the appropriate authority. I had no knowledge that . . . there were any issues whatsoever."); *id.* at 179:14-186:25 (VSI principal Rajan testifies that neither VSI nor Rembrandt disclosed the LFCA to the Trustee or to any of the numerous courts before which Rembrandt was litigating matters over which the LFCA purportedly gives VSI exclusive control of Rembrandt's settlement authority); *id.* at 108:3 (Rembrandt counsel and CFO Christopher Michaels testifies that Rembrandt did not tell the Trustee about the LFCA).

23

Under these facts, even if the LFCA deprived Rembrandt of actual authority to enter into the Rembrandt Settlement Agreement with the Trustee, the Rembrandt Settlement Agreement is still binding and enforceable because the Trustee was not given any reason to doubt the authority of Messrs. Michaels and Blumenthal to enter into the agreement on Rembrandt's behalf. *See, e.g., Brennan*, 2021 WL 5882115, at *5 (holding that, even if a corporation's CFO lacked actual authority to bind the corporation, a contract negotiated and executed by him was enforceable against the corporation under the apparent authority doctrine because CFO is a "managerial role that generally carries a great deal of authority"); *cf. also In re JDN Props.*, 2015 WL 5168600, at *10 (in determining whether a settlement agreement is valid and enforceable for purposes of a 9019 motion, "[t]he parties' objective intent governs. A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested." (citation omitted)).

In sum, VSI's claims requesting an injunction and a declaratory judgment are meritless and should be dismissed with prejudice.

## 2.    Promissory Estoppel (Count V)

VSI's fifth count is for promissory estoppel against defendants who include the Trustee and the Stream Debtor. *See* FAC at ¶¶ 179-181.  Under Pennsylvania law, a "promissory estoppel claim requires a plaintiff to allege that (1) the defendants made a promise that they should have reasonably expected to induce action or forbearance on plaintiff's part; (2) the plaintiff actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.  The first criterion is only met if the plaintiff pleads facts to show the existence of an express promise made by defendants; and the plaintiff cannot rely on a broad and vague implied promise." *Voltarelli v. Immaculata Univ.*, 614 F. Supp. 3d 158, 166

(E.D. Pa. 2022) (internal citations, quotation marks, and alteration marks omitted).  VSI fails to

allege that either the Trustee or the Debtor made any kind of promise to VSI, much less an express

promise of the type enforceable via a claim for promissory estoppel.  *See, e.g.,* FAC at ¶ 180

(alleging that Rembrandt, not the Trustee or Stream, made a promise to VSI).  Accordingly, VSI's

claim for promissory estoppel should be dismissed as to the Trustee and Stream.

### 3.      Conversion (Count VI)

VSI's sixth count is for conversion against all defendants, including the Trustee and the

Stream Debtor.  *See* FAC at ¶¶ 182-184.  Specifically, VSI alleges that "Defendants wrongfully

exercised dominion over VSI's property interests by transferring technology and litigation rights

subject to VSI's control under the LFCA.  VSI's bargained-for rights in settlement approval and

Ultra-D access were specific, identifiable property interests, and defendants' unauthorized transfer

constitutes conversion."  FAC at ¶¶ 183-184 (formatting altered).

Because the property interests that were purportedly converted were contractual rights

arising solely out of the LFCA, VSI's conversion claim is barred by the gist of the action doctrine.

"In general, courts are cautious about permitting tort recovery based on contractual breaches.  In

keeping with this principle, [Pennsylvania courts have] recognized the 'gist of the action' doctrine,

which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort

claims. . . . [A] claim should be limited to a contract claim when the parties' obligations are defined

by the terms of the contracts, and not by the larger social policies embodied by the law of torts."

*Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581–82 (Pa. Super. 2003) (internal citations and

quotation marks omitted).

Moreover, even assuming that VSI's supposed rights under the LFCA could be property

that is the proper subject of a conversion claim, VSI fails to allege that Homony did anything to

deprive VSI of the use of said property intentionally. "The elements of a claim for conversion under Pennsylvania law are: (1) the deprivation of another's right in, or use or possession of, property, (2) without the owner's consent, and (3) without lawful justification. In Pennsylvania, conversion is a willful tort. . . . Importantly, the exercise of control over the chattel must be intentional." *Ockley v. Radnor Twp.*, No. CV 24-4070, 2025 WL 2784225, at *14–15 (E.D. Pa. Sept. 30, 2025) (internal quotation marks, alteration marks, and citations omitted). Here, VSI simply alleges that, pursuant to the LFCA, "Rembrandt did not have the authority to conduct settlement negotiations or enter into any settlement agreement without the express pre-approval of VSI." FAC at ¶ 34. The FAC does not allege that the Trustee intentionally deprived VSI of its rights under the LFCA, nor could it, given the uncontroverted evidence presented in the context of the Rembrandt 9019 Motion, which establishes that VSI and Rembrandt kept the LFCA a secret from the Trustee.

### 4.     The DTSA (Count VII)

The DTSA provides a private right of action only to the "owner of a trade secret[,]" with "owner" statutorily defined as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed[.]" 18 U.S.C. §§ 1836(b)(1), 1839(4). VSI's FAC clearly alleges that Rembrandt is the legal owner of the purported trade secrets at issue. *See, e.g.,* FAC at ¶¶ 23-24 (section titled "Homony's Infringement of Rembrandt's Intellectual Property"), 134 ("Accepting payment for the transfer of Rembrandt's trade secrets is a violation of the DTSA."), 145 (discussing the DTSA in the context of "Rembrandt's trade secrets"), 187 ("Homony . . . permitted the transfer of Rembrandt's trade secrets").

VSI attempts to manufacture standing under the DTSA by alleging that it has "contractual rights to the benefits of Rembrandt's trade secrets via the LFCA." *Id.* at ¶ 188. But this is

insufficient to create "equitable title" to the trade secrets at issue as required under the LFCA.

"Equitable title is a title that indicates a beneficial interest in property and that gives the holder the

right to acquire formal title." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 420 (S.D.N.Y.

2021) (quotation marks and citation omitted).  While LFCA Amendment #2 purports to provide

VSI with the future right to obtain ownership or access to "the Stream Ultra-D technology," *see*

FAC at ¶ 36, VSI fails to allege that it has any right to acquire formal title to the purported

Rembrandt trade secrets allegedly incorporated into that technology.  Accordingly, VSI's own

pleading establishes that it holds neither legal nor equitable title to the Rembrandt trade secrets,

and its DTSA claim should be dismissed with prejudice.

Moreover, "[a] [DTSA] plaintiff must identify the trade secret with enough particularity as

to separate the trade secret from matters of general knowledge in the trade or of special knowledge

of persons skilled in the trade.  Generally, vague references to products and information will not

suffice." *Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-CV-02888, 2021 WL 229322, at *4

(E.D. Pa. Jan. 22, 2021) (quotation marks and citations omitted); *see also Am. Glass Mach. v. Ott*,

No. CV 23-275, 2025 WL 1519934, at *3 (W.D. Pa. May 28, 2025) ("To plead the existence of a

trade secret in a misappropriation claim brought under the . . . DTSA . . ., a Plaintiff must

sufficiently identify the information it claims as a trade secret and allege facts supporting the

assertion that the information is indeed protectable as such."); *Greenstar Techs., LLC v. Gouru*,

No. CV 23-21293 (MAS) (JBD), 2025 WL 1311397, at *3 (D.N.J. May 5, 2025) ("At the pleadings

stage, Plaintiffs must provide Defendants with notice to ascertain at least the boundaries within

which the secret lies and detail sufficient facts that allow the Court to infer a trade secret claim."

(quotation marks and citation omitted)).  Here, VSI makes no effort to describe the purported trade

secrets at issue, other than to allege that they belonged to Rembrandt.  VSI's failure to include the

requisite level of specificity as to the identification of the trade secrets at issue is fatal to its DTSA

claim.

### 5.    Conspiracy/Aiding and Abetting (Count VIII)

VSI purports to state a claim for "Conspiracy/Aiding and Abetting" against the Trustee,

alleging without further specifics that "[a]ll of the Defendants colluded and created an illegal

combination for a common unlawful purpose" and that "Defendants, including Homony and

Rembrandt, combined to deprive VSI of its contractual rights and to transfer technology

unlawfully."  FAC at ¶¶ 190-191.

"To prove civil conspiracy under Pennsylvania law, a plaintiff must establish the following

elements: (1) a combination of two or more persons acting with a common purpose to do an

unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act

done in pursuance of the common purpose; and (3) actual legal damage."  *Plumbers' Loc. Union

No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 4235773, at *11 (E.D. Pa. Sept.

25, 2017) (quotation marks and citation omitted).  As established above in the context of VSI's

conversion claim, the Trustee was unaware of the Rembrandt-VSI LFCA at the time he entered

into the Rembrandt-Trustee Settlement.  Accordingly, he could not have acted with a common

purpose with Rembrandt to violate VSI's purported rights under that agreement.  And the only

transfer of any technology which occurred was that approved by this Court's Sale Order, meaning

that such transfer could not have been "by unlawful means or for an unlawful purpose."

Rembrandt's claim of conspiracy is thus entirely without merit.

"Pennsylvania recognizes a claim for civil liability for aiding and abetting a tort pursuant

to the Restatement (Second) of Torts § 876.   Liability for aiding and abetting requires proof of

three elements: underlying tortious conduct, knowledge, and substantial assistance.  There can be

no claim for aiding and abetting unless plaintiff has also alleged a viable claim for the underlying tort." *Id.* Here, the FAC includes only two tort claims: conversion (Count VI) and violation of the DTSA (Count VII). As set forth in detail above, there can be no underlying claim for conversion for a violation of contractual rights. Moreover, VSI has failed to plead any knowledge on the Trustee's part of the LFCA, which could form the basis for an aiding and abetting conversion claim. Finally, there can be no aiding and abetting liability under the DTSA as a matter of law. *See, e.g., C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-CV-379-KKC, 2019 WL 1368621, at *14 (E.D. Ky. Mar. 26, 2019).

## V.     **CONCLUSION**

In light of the foregoing facts and authorities, the Trustee respectfully requests that this Court enter an order dismissing VSI's claims against him and Stream with prejudice.

Respectfully submitted,

Dated: October 13, 2025

By: */s/ Steven M. Coren*
Steven M. Coren, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700

and

By: */s/ Michael D. Vagnoni*
Michael D. Vagnoni, Esquire
Edmond M. George, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066

*Counsel to the Chapter 11 Trustee*

29