**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **STREAM TV NETWORKS, INC.,** *et al.* | **Case No. 23-10763 (DJB)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| **VISUAL SEMICONDUCTOR, INC.** | |
| **Plaintiff** | |
| **v.** | **Adv. Case No. 25-197 (DJB)** |
| **REMBRANDT 3D HOLDING, LTD.; STEPHEN K. BLUMENTHAL; STREAM TV NETWORKS, INC.; WILLIAM A. HOMONY, IN HIS OFFICIAL CAPACITY AS TRUSTEE AND INDIVIDUALLY (AS ULTRA VIRES); SEECUBIC, INC.; SHADRON L. STASTNEY; HAWK INVESTMENT HOLDINGS LIMITED; ARTHUR LEONARD ROBERT MORTON; AND SEECUBIC B.V.** | |
| **Defendants** | |

**SEECUBIC, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE FIRST AMENDED ADVERSARY COMPLAINT**

---

[1]      The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

    A.    Stream Files Yet Another Petition for Bankruptcy .................................. 3

    B.    The Court Removes Mr. Rajan From the Helm of Stream TV and
          Appoints a Chapter 11 Trustee, in Part Because of Mr. Rajan's Apparent
          Loyalties to VSI Rather Than Stream TV ............................................... 4

    C.    The Court Approves the Trustee's Settlement With Stream's Secured
          Creditors and a Section 363 Sale of Substantially All Of of Stream TV's
          Assets ..................................................................................................... 5

    D.    The Trustee Seeks the Court's Approval of a Settlement Between Stream
          TV and Rembrandt; VSI Objects, Revealing That It Had Been Funding
          Rembrandt's Litigation Against Stream TV and Others ......................... 6

    E.    The Instant Complaint ............................................................................ 7

ARGUMENT ............................................................................................................... 9

I.    TO THE EXTENT THE COMPLAINT CHALLENGES THE 363 SALE, IT IS
     BARRED BY RES JUDICATA AND THE FIRST-FILED RULE AND
     SHOULD BE DISMISSED ............................................................................... 10

II.    VSI LACKS STANDING BECAUSE THE COMPLAINT DOES NOT ALLEGE
     THAT VSI SUFFERED ANY COGNIZABLE HARM AS A RESULT OF
     SEECUBIC's ALLEGED CONDUCT ............................................................ 12

III.    THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST SEECUBIC ............ 14

    A.    VSI's Declaratory Judgment Claim (Count I) Fails Because the Complaint
          Does Not Plead Any Live Case or Controversy Between VSI and
          SeeCubic ................................................................................................. 14

    B.    Count II—"Injunction"—Should Be Dismissed Because It Is Not a
          Cognizable Causes of Action as a Matter of Law .................................. 15

    C.    VSI Fails to State a Claim for Conversion (Count VI) ......................... 15

    D.    VSI Fails to State a Claim for Violation of the Defend Trade Secrets Act
          (Count VII) ............................................................................................. 16

1.    VSI Does Not Have Standing to Assert Claims for
Misappropriation of Rembrandt's Trade Secrets ....................................16

2.    Even If VSI Had Standing, the Complaint Fails to Plead Even the
Most Basic Elements of a DTSA Claim ...................................................17

E.    VSI Fails to State a Claim for "Civil Conspiracy/Aiding and Abetting"
(Count VIII)....................................................................................................19

CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acclaim Systems, Inc. v. Infosys, Ltd.*,
No. 13-7336, 2015 WL 4257463 (E.D. Pa. July 14, 2015) ...........................................20

*Amelio v. McCabe, Weisberg & Conway, P.C.*,
No. 14-1611, 2015 WL 4545299 (W.D. Pa. July 28, 2015) ..........................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................................9

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) ..........................................................................................9

*Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*,
No. 23-328-JLH-CJB, 2025 WL 2443517 (D. Del. May 1, 2025) .................................16

*Boyanowski v. Capital Area Intermediate Unit*,
215 F.3d 396 (3d Cir. 2000) .........................................................................................20

*Caldwell v. Beard*,
No. 07-726, 2007 WL 2905906 (W.D. Pa. Sept. 28, 2007) .............................................9

*Chavez v. Dole Food Co.*,
796 F.3d 261 (3d Cir. 2015), *reh'g en banc granted, opinion vacated on
other grounds* (Sept. 22, 2015) ....................................................................................11

*Connelly v. Lane Construction Corp.*,
809 F.3d 780 (3d Cir. 2016) ...........................................................................................9

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925 (3d Cir. 1941) .........................................................................................10

*Danping Li v. Gelormino*,
No. 3:18-cv-442 (MPS), 2019 WL 1957539 (D. Conn. May 2, 2019) ..........................17

*Easter v. City of Dallas Probate Division*,
No. 3:21-CV-0860-D (BH), 2022 WL 2975349 (N.D. Tex. June 27, 2022)...................18

*Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*,
540 F. Supp. 3d 491 (E.D. Pa. 2021).............................................................................16

*Elsevier Inc. v. Doctor Evidence, LLC*,
No. 17-cv-5540 (KBF), 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ............................17

*Friedberg v. Barefoot Architect Inc.*,
 723 F. App'x 100 (3d Cir. 2018)..................................................................3

*Government Employees Insurance Co. v. Nealey*,
 262 F. Supp. 3d 153 (E.D. Pa. 2017)..........................................................18

*Hassen v. Government of Virgin Islands*,
 861 F.3d 108 (3d Cir. 2017)........................................................................9

*Hasson v. FullStory, Inc.*,
 No. 2:22-cv-1246, 2023 WL 4727619 (W.D. Pa. July 25, 2023) ....................13

*Herley Industries, Inc. v. R Cubed Engineering, LLC*,
 No. 5:20-cv-02888, 2021 WL 229322 (E.D. Pa. Jan. 22, 2021)....................17

*Jones v. GEICO Choice Insurance Co.*,
 617 F. Supp. 3d 275 (E.D. Pa. 2022), *aff'd sub nom. Berardi v. USAA General
 Indemnity Co.*, No. 22-2231, 2023 WL 4418219 (3d Cir. July 10, 2023)......................15

*Laake v. Mooney*,
 No. 3:22-cv-17, 2022 WL 17976326 (W.D. Pa. Dec. 28, 2022) ....................9

*Landau v. Viridian Energy PA LLC*,
 274 F. Supp. 3d 329 (E.D. Pa. 2017)........................................................10, 11

*Lundy v. Hochberg*,
 91 F. App'x 739 (3d Cir. 2003)................................................................12, 14

*Monge v. University of Pennsylvania*,
 No. 22-2942, 2023 WL 3594471 (E.D. Pa. May 22, 2023)............................20

*Phillips v. Selig*,
 959 A.2d 420 (Pa. Super. Ct. 2008) ............................................................19

*Prewitt v. Walgreens Co.*,
 No. 12-6967, 2013 WL 6284166 (E.D. Pa. Dec. 2, 2013)..............................11

*In Rothman*,
 No. 23-15073-ABA, 2024 WL 695753 (Bankr. D.N.J. Feb. 20, 2024) ..........12

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
 543 F. Supp. 2d 404 (E.D. Pa. 2008)..........................................................11

*Simon v. Eastern Kentucky Welfare Rights Organization*,
 426 U.S. 26 (1976) ....................................................................................12

*Slaieh v. Simons*,
 584 B.R. 28 (C.D. Cal. 2018).......................................................................18

*Southeast Power Group, Inc. v. SAP America, Inc.*,
    No. 2:20-cv-00398-JMG, 2020 WL 4805352 (E.D. Pa. Aug. 18, 2020) ........................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..................................................................................................12

*Stephanatos v. Wayne Township*,
    No. 12-1793 (FSH), 2013 WL 1629078 (D.N.J. Apr. 15, 2013) ....................................18

*Stevenson v. Economy Bank of Ambridge*,
    413 Pa. 442 (1964) ...................................................................................................15

*Synthes, Inc. v. Knapp*,
    978 F. Supp. 2d 450 (E.D. Pa. 2013)....................................................................10, 11

*Whitehead v. Allied Signal, Inc.*,
    No. 98-6305, 1998 WL 874868 (10th Cir. Dec. 16, 1998)............................................19

## STATUES

18 U.S.C. §§ 1831 to 1839 ..............................................................................................16

18 U.S.C. § 1836(b)(1).....................................................................................................16

18 U.S.C. § 1839(3)(A) ....................................................................................................18

28 U.S.C. § 2201(a) .........................................................................................................14

Del. Code Ann. tit. 8, § 272(c) ...........................................................................................8

## OTHER AUTHORITIES

Restatement (Second) of Torts § 876(b) (1979) .......................................................................20

Defendant SeeCubic, Inc. ("SeeCubic") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint (the "Complaint") filed by Visual Semiconductor, Inc. ("VSI").

## PRELIMINARY STATEMENT

This Complaint is just the latest acrimonious chapter in the years'-long story concerning Stream TV Networks, Inc.'s ("Stream TV") failure to meet, and its secured creditors' efforts to enforce, its obligations.  VSI, under the management of Stream TV's former CEO, Mathu Rajan, has now filed a meandering, 52-page Complaint, purporting to allege a vast, multi-year conspiracy involving nearly a dozen defendants, including Stream's Court-appointed Chapter 11 Trustee (the "Trustee")—and at least four state and federal judges across three jurisdictions who ruled against Stream TV (when Mr. Rajan was at the helm) and against VSI.  But extraordinary claims require extraordinary evidence, and VSI has failed to come remotely close to alleging any claims against SeeCubic.

The Complaint spends dozens of pages on Mr. Rajan's years-long dispute with its secured creditors, including SeeCubic, and complaining of the alleged harm suffered by Stream TV.  These allegations—which have been considered and rejected by multiple courts in the last five years—are not relevant to the claims VSI is purporting to assert.  When stripped of these irrelevant allegations, the Complaint essentially takes issue with two events: (i) the sale of substantially all of Stream TV's assets to SeeCubic pursuant to Bankruptcy Code Section 363 (the "363 Sale"); and (ii) a proposed settlement between Stream TV, under the direction of the Trustee, and Rembrandt 3D Holdings, Ltd. ("Rembrandt").  Though vague, VSI asserts that through these two events, it has been deprived of its rights under a litigation funding agreement between itself and Rembrandt.  Specifically, VSI alleges that it has been deprived of (i) its alleged right to approve the settlement of claims between Rembrandt and Stream TV (ii) its

alleged contingent right to obtain certain technology that, according to VSI, was transferred

unlawfully to SeeCubic in the 363 Sale should Rembrandt somehow obtain it.  None of this gives

rise to any claims by VSI against SeeCubic, and the Complaint should be dismissed against

SeeCubic for several reasons.

*First*, to the extent that any of VSI's claims challenge the propriety of the 363 Sale—and

they do, repeatedly claiming injury through the alleged unlawful asset transfer thereunder—they

are barred by the doctrines of res judicata or, in the alternative, by the first-filed rule.

*Second*, VSI fails to plead that it has Article III standing to pursue claims against

SeeCubic because it does not plead any facts that suggest VSI's purported injuries are fairly

traceable to SeeCubic.  SeeCubic is not a party to the litigation funding agreement between

Rembrandt and VSI, and there are no allegations that SeeCubic had anything at all to do with

Rembrandt's alleged failure to adhere to its obligations under that agreement.  Likewise,

SeeCubic did not unlawfully transfer any assets in the 363 Sale; it was the buyer.

*Third*, VSI fails to state a claim against SeeCubic.  VSI purports to bring claims for

declaratory judgment, injunction, conversion, violation of the Defend Trade Secrets Act, and

"civil conspiracy/aiding and abetting."  As detailed more fully below, these claims suffer from

myriad flaws, including, but not limited to, that two of these causes of action do not exist under

Pennsylvania law.

# FACTUAL BACKGROUND[1]

## A.    Stream Files Yet Another Petition for Bankruptcy

On March 15, 2023, Stream TV, then managed by Mr. Rajan, filed a voluntary petition

for relief under Chapter 11 of the United States Bankruptcy Code.  *See* Petition, *In re Stream TV*

*Networks, Inc.*, No. 23-10763-djb (Bankr. E.D. Pa. Mar. 15, 2023) ("Bankruptcy Case"), ECF

No. 1.

The filing was Stream's third bankruptcy since early 2021, with the prior two being (i) a

voluntary Chapter 11 case filed on February 24, 2021, captioned *In re Stream TV Networks, Inc.*,

No. 21-10433-KBO (Bankr. D. Del.) (the "Delaware Voluntary Bankruptcy Case"); and (ii) an

involuntary Chapter 7 case initiated on May 23, 2021 by, among others, Rembrandt, with Stream

TV's cooperation, captioned *In re Stream TV Networks, Inc.*, No. 21-10848-KBO (Bankr. D.

Del.) (the "Delaware Involuntary Bankruptcy Case").  Stream TV's Delaware Voluntary

Bankruptcy Case was dismissed as a bad-faith filing.  *See* May 17, 2021 H'rg Tr. at 13:5-19:18,

Delaware Voluntary Bankruptcy Case, No. 21-10433-KBO (Bankr. D. Del. May 17, 2021), ECF

No. 200.  That dismissal was affirmed by the District Court on December 16, 2021.  *See* Order,

*In re Stream TV Networks, Inc.*, No. 21-723-RGA (D. Del. Dec. 16, 2021), ECF No. 32.

Stream TV's Delaware Involuntary Bankruptcy Case was likewise dismissed, with the

court noting that it appeared to be an attempt to circumvent its dismissal of the Delaware

Voluntary Bankruptcy and imposing a 12-month bar on further bankruptcy filings by or

---

[1]    The factual and procedural background of these cases are well-known to this Court.  To
the extent not described herein, SeeCubic incorporates the Court's recitation of the factual and
procedural background set forth in its opinions dated January 5, 2024 (ECF No. 548) and
January 8, 2025 (ECF No. 916).  Certain of the factual recitations herein are based upon public
records in Stream TV's current and past bankruptcy actions.  On a motion to dismiss, the Court
may consider matters of public record, including documents filed on bankruptcy and other court
dockets.  *See Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018).

regarding Stream TV.  *See* June 10, 2021 H'rg Tr. at 63:18-64:6, Delaware Involuntary

Bankruptcy Case, No. 21-10848-KBO (Bankr. D. Del. June 10, 2021), ECF No. 36.  The

petitioning creditors voluntarily dismissed their appeal on December 7, 2021.  *See* Order on

Stipulation of Dismissal, *In re Stream TV Networks, Inc.*, No. 21-cv-00889-RGA (D. Del. Dec.

7, 2021), ECF No. 30.

> **B.**     **The Court Removes Mr. Rajan From the Helm of Stream TV and Appoints a
> Chapter 11 Trustee, in Part Because of Mr. Rajan's Apparent Loyalties to
> VSI Rather Than Stream TV**

Shortly after Stream TV filed the Bankruptcy Case, Stream TV's secured creditors filed a

motion to dismiss, convert the case to chapter 7, or appoint a chapter 11 trustee.  *See* Emergency

Motion Pursuant to Section 1112(b) of the Bankruptcy Code Either (A)(1) to Dismiss the

Debtors' Chapter 11 Cases, et al., Bankruptcy Case, No. 23-10763-djb (Bankr. E.D. Pa. Apr. 6,

2023), ECF No. 83.  On January 5, 2024, this Court granted that motion, appointing a Chapter 11

Trustee.  Opinion and Order, Bankruptcy Case, No. 23-10763-djb (Bank. E.D. Pa. Jan. 5, 2024),

ECF Nos. 548, 549 (the "Trustee Opinion" and "Trustee Order").

In the Trustee Opinion, the Court found that Mr. Rajan had grossly mismanaged Stream

TV's estate, noting its "primary and urgent concern with the administration of the Debtors' cases

to date, *i.e.*, the plans, trustworthiness, and motivations of Mr. Rajan in is role as, for all intents

and purposes, the singular figure in the Debtors' management."  Trustee Opinion, Bankruptcy

Case, No. 23-10763-djb (Bankr. E.D. Pa. Jan. 5, 2024), ECF No. 548, at 31.  Among other

things, the Court found Mr. Rajan to be not credible—including expressing serious doubts as to

whether a proposed transaction Mr. Rajan presented to fund Stream TV was fabricated and

whether purchase orders and other transactions Mr. Rajan touted were likewise illusory.  *Id.* at

37-38, 51-58.  The Court was also troubled by Mr. Rajan's simultaneous service as CEO of both

Stream TV *and* VSI, which Mr. Rajan created in 2022 and continues to control—particularly

since many of Mr. Rajan's actions during the course of the Bankruptcy Case were primarily to

benefit VSI, with no clear benefit to Stream TV.  *Id.* at 46-51.  As the Court elaborated,

> In sum, . . . the history of these cases has been littered with questions about the role
> and involvement of VSI, the Debtors' ability to operate independent of VSI, and
> whether Mr. Rajan is able to differentiate his role with the Debtors from his role
> with VSI.  Alarmingly, the interrelationship between VSI, Stream, and Mr. Rajan's
> overlapping interests and roles in each is so entrenched that Mr. Rajan's testimony
> at Trial was at times rendered unintelligible, or alternatively, intentionally
> deceptive, by his inability or unwillingness to draw distinction between the entities
> and his roles with each.  It has consistently appeared that he cannot, and the
> Debtors' transactions and requested relief outlined herein are indicative of his
> inherent conflict of interest.

*Id.* at 61.  Thereafter, the Court entered an order granting the United States Trustee's Motion to

Appoint William A. Homony as Chapter 11 Trustee.  *See* Order, Bankruptcy Case, No. 23-

10763-djb (Bankr. E.D. Pa. Jan. 12, 2024), EF No. 558.

C. **The Court Approves the Trustee's Settlement With Stream's Secured
Creditors and a Section 363 Sale of Substantially All of Stream TV's Assets**

On May 6, 2024, the Trustee filed a motion pursuant to Rule 9019 of the Federal Rules of

Bankruptcy Procedure to approve a settlement with Stream TV's secured creditors.  Motion to

Approve Compromise, Bankruptcy Case, No. 23-10763-djb (Bankr. E.D. Pa. May 6, 2024), ECF

No. 630.  VSI and Rembrandt vehemently opposed the settlement, including on the ground that

VSI had presented an allegedly "viable proposal that would be more beneficial to the estate" than

the settlement reached by the Trustee.  Objections to Motion to Approve Compromise, *id.*, ECF

Nos. 642, 643.  After considering those objections, the Court approved the settlement on June 6,

2024, holding that the settlement "represents a valid exercise of the Trustee's business

judgement, having been informed by extensive research, investigation, and negotiation by the

Trustee and other parties in interests."  Order, *id.*, ECF No. 653.

Following approval of the settlement, the Trustee sought the Court's authorization and

approval of a stalking horse asset purchase agreement and bid procedures in connection with the

5

sale of substantially all of Stream TV's assets on an "as is," "where is" basis to the stalking horse

bidder, SeeCubic.  Motion, *id.*, ECF No. 750.  The Court approved the stalking horse asset

purchase agreement and bidding procedures on November 20, 2024, and subsequently approved

the Trustee's motion to approve the sale of substantially all of Stream TV's assets on December

9, 2024 (the "Sale Order").  *Id.*, ECF Nos. 811, 876.  No alternative bids to SeeCubic's stalking

horse bid were received in the sale, which was approved by the Court on December 9, 2024, and

detailed in an opinion dated January 8, 2025.  *Id.*, ECF No. 876 ("Sale Order"), No 916 ("Sale

Opinion").  The 363 Sale closed in January 2025.  *Id.*, ECF No. 915.

      VSI and Rembrandt opposed the 363 Sale at every turn, including opposing the bidding

procedures and stalking horse asset purchase agreement and the sale, arguing that the proposed

sale would include intellectual property belonging to Rembrandt and that the Trustee had failed

to remove that property from the assets to be sold.  *Id.* ECF Nos. 788, 789, 815, 816.  The day

before a scheduled hearing to approve the 363 Sale, VSI filed a proposed plan of reorganization

for Stream TV, which prominently featured support from Rembrandt.  *Id.* ECF No. 848.  For its

part, Rembrandt filed an adversary proceeding seeking to enjoin the sale.  *Id.*, ECF No. 839.  VSI

and Rembrandt also appealed the Court's Sale Order and order denying VSI and Rembrandt's

motion to stay the Sale Order pending appeal.  *See In re Stream TV Networks*, No. 24-cv-06397-

JMG (E.D. Pa.) (the "Sale Appeal").  The Sale Appeal is fully briefed and pending adjudication.

      **D.**    **The Trustee Seeks the Court's Approval of a Settlement Between Stream TV
and Rembrandt; VSI Objects, Revealing That It Had Been Funding
Rembrandt's Litigation Against Stream TV and Others**

      On July 15, 2025, the Trustee filed a motion to approve a proposed settlement between

Stream TV and Rembrandt, which would resolve six federal actions involving Rembrandt and

Stream TV (or its top-level subsidiary), including Rembrandt's pursuit of the Sale Appeal, and

Rembrandt's claim in the Bankruptcy Case.  *See* Motion to Approve Compromise, Bankruptcy

6

Case, No. 23-10763-djb (Bankr. E.D. Pa. July 15, 2025), ECF No. 1040 (the "Proposed

Rembrandt Settlement").

      VSI opposed the Proposed Rembrandt Settlement, predominantly on the grounds that

pursuant to a previously undisclosed litigation funding agreement between VSI and Rembrandt

(the "Rembrandt-VSI Litigation Funding Agreement"), VSI allegedly had the right to approve

any settlement between Rembrandt and Stream TV in exchange for funding certain litigation

brought by Rembrandt against, among others, Stream TV and SeeCubic.  Objection, *id.*, ECF

No. 1053; *see also* ¶¶ 25-38.[2]  According to VSI, the Proposed Rembrandt Settlement should not

be approved because Rembrandt did not have the authority to enter into it, having failed to obtain

VSI's consent to do so.[3]

      **E.**     **The Instant Complaint**

      Before the Court could hear the Trustee's motion on the Proposed Rembrandt Settlement,

VSI filed this suit.  Evidencing its intent to simply throw sand in the gears, the complaint first

filed in this action was a draft, cutting off partway through factual allegations, failing to list any

causes of action, and including a number of comments from VSI executives.  *See* ECF No. 1.

After a hearing on September 8, 2025, on the Trustee's motion at which the Court expressed

skepticism that the Rembrandt-VSI Litigation Funding Agreement had any relevance to the

Trustee's motion, VSI filed the instant Complaint.  *See* ECF No. 7.  Of the Complaint's 52

pages, only five concern what appears to be actually in dispute here: the Proposed Rembrandt

---

[2]     Citations to "¶ __" are to the First Amended Complaint, ECF No. 7.

[3]     Under the Rembrandt-VSI Litigation Funding Agreement, in the event that Rembrandt
somehow obtained "ownership or access to" the Ultra-D technology sold to SeeCubic in the 363
Sale, Rembrandt would transfer it to VSI.  ¶ 36.

Settlement and VSI's claim that the Rembrandt-VSI Litigation Funding Agreement prevented

Rembrandt from entering into that agreement without VSI's consent.  *See* Compl. at pp. 5-9.

Nonetheless, the Complaint purports to assert eight causes of action against nine

defendants, including Rembrandt, the Trustee, Stream TV, SeeCubic, SeeCubic's CEO (Shadron

Stastney), a SeeCubic subsidiary, and one of Stream TV's former secured creditors, Hawk

Investment Holdings, Ltd. ("Hawk").  *Id.*  Though brought by VSI, the Complaint devotes

dozens of pages to recycling the same allegations that Mr. Rajan caused Stream TV to espouse

for years concerning Mr. Stastney, SeeCubic, and Hawk's efforts to collect payment for or

recover collateral on secured debt for which Stream TV had defaulted in 2020.  *See* Compl. at

pp. 15-24, 27-28, 28-33.  These allegations—often contradicted by final and binding factual

findings in numerous judicial decisions, including the Trustee Opinion and Sale Opinion—claim

no harm to VSI.  *Id.*  Instead, in VSI's retelling of events, Stream TV's secured creditors, the

Hon. J. Travis Laster of the Delaware Court of Chancery, and the Hon. Karen Owens of the U.S.

Bankruptcy Court for the District of Delaware were engaged in a conspiracy against Stream TV

and Mr. Rajan.  ¶¶ 65, 74-75, 154.[4]  According to VSI, the Trustee, Stream TV, the Hon.

Magdeline Coleman, and the Hon. Ashely Chan later joined the plot against Mr. Rajan,

---

[4]    VSI's attacks on judges who have disagreed with Mr. Rajan in the Complaint are, to say
the least, unprofessional, unwarranted, and inappropriate.  The Complaint should be dismissed
for this reason alone.

These attacks are also untethered to reality.  While VSI attacks decisions by the Hon. J.
Travis Laster of the Delaware Court of Chancery and touts the Delaware Supreme Court's
reversal of one of that court's decisions, the Complaint fails to note that in direct response to the
Delaware Supreme Court's opinion, the Delaware Legislature codified Vice Chancellor Laster's
approach.  *See* Del. Code Ann. tit. 8, § 272(c).  And in attacking the Hon. Karen Owens's
finding that Stream TV's Delaware Voluntary Bankruptcy Case was a bad faith filing, the
Complaint fails to note that that decision was *affirmed* by the District Court and not appealed
further.

conspiring to unlawfully sell Stream TV's assets to SeeCubic in the 363 Sale and prevent VSI from acquiring Stream TV through a plan of reorganization.  ¶¶ 82, 129.

As against SeeCubic, the Complaint purports to assert five causes of action: (i) declaratory judgment; (ii) injunction; (iii) conversion; (iv) violation of the Defend Trade Secrets Act; and (v) "civil conspiracy/aiding and abetting."  All of these claims are asserted in a shotgun pleading style, claiming wrongdoing by "Defendants" generally without identifying what specific conduct SeeCubic is alleged to have engaged in to give rise to any cause of action.  *E.g.*, ¶¶ 182-84 (conversion claim alleging that "Defendants" wrongfully exercised dominion and control over VSI's property).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the court must accept as true well-pleaded factual assertions, it need not accept "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."  *Hassen v. Gov't of V.I.*, 861 F.3d 108, 115 (3d Cir. 2017) (citation omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (Courts need not accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as . . . factual allegation[s]." (citations omitted)).  The Court also need not "accept as true anything in the complaint which contradicts facts of which the court may take judicial notice."  *Caldwell v. Beard*, No. 07-726, 2007 WL 2905906, at *2 (W.D. Pa. Sept. 28, 2007); *see also Laake v. Mooney*, No. 3:22-cv-17, 2022 WL 17976326, at *3 (W.D. Pa. Dec. 28, 2022) ("[T]he Court

9

need not accept as true allegations that are directly contradicted by indisputably authentic

documents on which the complaint relies, or matters of public record." (citation omitted));

*Amelio v. McCabe, Weisberg & Conway, P.C.*, No. 14-1611, 2015 WL 4545299, at *4 (W.D. Pa.

July 28, 2015) (The Court "need not accept allegations that are internally inconsistent[.]").

As set forth below, all claims against SeeCubic should be dismissed.

## I. TO THE EXTENT THE COMPLAINT CHALLENGES THE 363 SALE, IT IS BARRED BY RES JUDICATA AND THE FIRST-FILED RULE AND SHOULD BE DISMISSED

As it relates to SeeCubic, the Complaint's claims are premised on the assertion that the

Trustee improperly transferred Rembrandt's intellectual property to SeeCubic in the 363 Sale.

¶¶ 23-24.  But these claims are barred by the doctrine of res judicata because they were the

subject of a final judgment on the merits—the Sale Order—after VSI vehemently litigated them

in this Court.  SeeCubic hereby incorporates by reference and adopts the Trustee's arguments in

the Trustee's Motion to Dismiss Adversary Complaint relating to res judicata.  *See* Trustee's

Memorandum of Law In Support of Chapter 11 Trustee's Motion to Dismiss Adversary

Complaint, Oct. 13, 2025, ECF No. 13-3, at 13-17.

Alternatively and independently, VSI is estopped under the first-filed rule from

collaterally challenging the 363 Sale because it is already litigating these same issues in the Sale

Appeal.  The first-filed rule provides that "when two courts possess the same case at the same

time, 'the court which first has possession of the subject must decide it.'"  *Landau v. Viridian

Energy PA LLC*, 274 F. Supp. 3d 329, 332 (E.D. Pa. 2017) (quoting *Crosley Corp. v. Hazeltine

Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)).  The first-filed rule is designed to promote "sound

judicial administration and comity among federal courts of equal stature" by ensuring the parties

avoid "vexation of multiple litigations covering the same subject matter."  *Synthes, Inc. v.

Knapp*, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013).

Though the textbook example of the first-filed rule "encompasses cases involving the same parties and the same transaction," courts in this District have embraced a "broader, close-enough-for-government-work approach to the rule and applied it to 'disputes involving *similar, concurrent actions.*'" *Landau*, 274 F. Supp. 3d at 332-33 (quoting *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 407 (E.D. Pa. 2008)); *see also Synthes*, 978 F. Supp. 2d at 457 ("We agree with those decisions holding that the rule's application is not cabined to proceedings involving identical parties and identical issues, but extends to cases where there is a substantial overlap of the subject matter.").  Stated differently, the first-filed rule applies even if the two actions do *not* involve identical parties and identical causes of action; if the core facts and subject matter are the same, the first-filed rule prohibits a plaintiff from pursuing relief in a second suit.  *See Prewitt v. Walgreens Co.*, No. 12-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013) ("The claims the plaintiff seeks to add were available to him at the time he filed his first complaint and nothing occurred thereafter which would enable him to avoid the necessary implications of the preclusion doctrines.").  The first-filed rule also applies regardless of whether the first-filed suit is pending in the trial court or is on appeal.  *See Chavez v. Dole Food Co.*, 796 F.3d 261, 266 (3d Cir. 2015) ("But, as we see it, the procedural posture of the first-filed case on the date the second-filed actions were dismissed, is irrelevant to the analysis. The relevant point-in-time is the filing date of the duplicative action."), *reh'g en banc granted, opinion vacated on other grounds* (Sept. 22, 2015); *Se. Power Grp., Inc. v. SAP Am., Inc.*, No. 2:20-cv-00398-JMG, 2020 WL 4805352, at *3 (E.D. Pa. Aug. 18, 2020) (applying first-filed rule where first-filed case was on appeal).

VSI's Complaint attempts to assert claims that substantially overlap with the Sale Appeal.  Among other things, in the Sale Appeal, VSI argues that this Court erred in approving

11

the 363 Sale because the 363 Sale improperly transferred Rembrandt's intellectual property to

SeeCubic. *See* Appellants' Brief, *Visual Semiconductor, Inc. v. Stream TV Networks, Inc.*, No.

24-cv-06498-JMG (Jan. 15, 2025), ECF No. 16, at 25-33.  VSI levels the exact same criticisms at

this Court in the Complaint (*e.g.*, ¶¶ 23-25) on its way to purporting to assert claims against

SeeCubic arising from its receipt of Stream TV's assets in the 363 Sale.  In a straight-forward

application of the settled first-filed rule, this Court should dismiss the Complaint insofar as it

relates to the propriety of the 363 Sale and the transfer of assets thereunder.

## II.    VSI LACKS STANDING BECAUSE THE COMPLAINT DOES NOT ALLEGE THAT VSI SUFFERED ANY COGNIZABLE HARM AS A RESULT OF SEECUBIC'S ALLEGED CONDUCT

All claims against SeeCubic should be dismissed in their entirety because VSI lacks

Article III standing to pursue them.  "Article III standing requires that '[t]he plaintiff must have

(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *In re

Rothman*, No. 23-15073-ABA, 2024 WL 695753, at *5 (Bankr. D.N.J. Feb. 20, 2024) (quoting

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  And at the pleading stage, that means the

"plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III Standing]."

*Spokeo*, 578 U.S. at 338 (citation omitted).  Particularly relevant here, the second requirement of

Article III standing requires that any alleged injury can be "fairly . . . traced to the challenged

action of the defendant, and not injury that results from the independent action of some third

party not before the court."  *Lundy v. Hochberg*, 91 F. App'x 739, 744 (3d Cir. 2003) (finding no

standing) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976) (finding no

standing)).  And where the pleadings do not reflect that any alleged injury "was caused by" the

challenged conduct of the defendant, those "allegation[s] of injury cannot form the basis for the

Article III standing."  *Lundy*, 91 F. App'x at 744.

VSI has not alleged facts demonstrating Article III standing.  As an initial matter, VSI's 52-page Complaint is filled with allegations dating back to 2020 concerning SeeCubic's alleged attempt to "seize" Stream TV's assets.  *E.g.*, Compl. ¶¶ 57-83, 88-89.  These allegations serve no purpose other than to disparage SeeCubic and Stastney, as any harm resulting from the alleged conduct was to Stream TV, not VSI—which did not even exist until 2022.[5]  Even if Stream TV had cognizable claims against SeeCubic relating to its pre-363 Sale conduct—it does not[6]—VSI has not explained how it could possibly have standing to pursue such claims on Stream TV's behalf.

Stripped of these extraneous (and misleading) factual allegations, the Complaint essentially puts forth two theories: (i) that VSI was harmed by Rembrandt's alleged breach of the Rembrandt-VSI Litigation Funding Agreement when Rembrandt entered into the Proposed Rembrandt Settlement with the Trustee; and (ii) that VSI was somehow harmed because the Trustee sold most of Stream TV's assets to SeeCubic in the 363 Sale.  But the Complaint does not plausibly allege that either of these purported injuries was caused by or fairly traceable to any conduct of SeeCubic.  It is undisputed that SeeCubic is not a party to the Rembrandt-VSI Litigation Funding Agreement or the Proposed Rembrandt Settlement, and the Complaint does not allege that SeeCubic caused, influenced, or otherwise had any role in Rembrandt's alleged

---

[5]     *See* Wyoming Secretary of State, Visual Semiconductor, Inc., https://wyobiz.wyo.gov/business/FilingDetails.aspx?eFNum=1671300500041962241340271672 45087170163074112014.; *Hasson v. FullStory, Inc.*, No. 2:22-cv-1246, 2023 WL 4727619, at *2 (W.D. Pa. July 25, 2023) (taking judicial notice of information regarding business entity from Texas Secretary of State website).

[6]     Among other reasons, in the Sharing and Carve-Out Agreement between Stream TV and SeeCubic (and others), ECF No. 630-1, Stream TV released SeeCubic from claims arising out of the same events described in the Complaint.  *Id.* at ¶ 7.  This Court approved the Sharing and Carve-Out Agreement on June 6, 2024.  *See* Order Granting Motion to Approve Compromise (June 6, 2024), ECF No. 653.

breach of the Rembrandt-VSI Litigation Funding Agreement.  Likewise, it is undisputed that

SeeCubic did not transfer Stream TV's assets—the Trustee did.  ¶ 23.  Rather, SeeCubic is the

good-faith purchaser of those assets.  *See* Sale Order, ECF No. 876, ¶ T.  In sum, because all of

VSI's alleged injuries result from the "independent action[s]" of parties other than SeeCubic, i.e.,

Rembrandt and the Trustee, VSI fails to plead clear facts indicating Article III standing.  *Lundy*,

91 F. App'x at 744.

## III.   THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST SEECUBIC

### A.    VSI's Declaratory Judgment Claim (Count I) Fails Because the Complaint Does Not Plead Any Live Case or Controversy Between VSI and SeeCubic

In Count I, VSI invokes the Declaratory Judgment Act against "Defendants" collectively,

seeking a declaration regarding "VSI's contractual rights under the [Rembrandt-VSI Litigation

Funding Agreement] and amendments, as well as ownership and control over IP incorporated

into Stream's assets."  ¶ 164.  This claim fails as to SeeCubic for multiple reasons.

*First*, a court must have "a case of actual controversy" before it "may declare the rights

and other legal relations of any interested party."  28 U.S.C. § 2201(a).  With respect to the

Rembrandt-VSI Litigation Funding Agreement, SeeCubic is not an interested party.  It did not

sign the Rembrandt-VSI Litigation Funding Agreement.  It received no benefits under the

Rembrandt-VSI Litigation Funding Agreement.  And it has no obligations under the Rembrandt-

VSI Litigation Funding Agreement.  The Complaint does not allege otherwise.  *See generally*

Compl.  As such, the legal relations of VSI and SeeCubic under the Rembrandt-VSI Litigation

Funding Agreement are not uncertain—they are non-existent.

*Second*, with respect to the alleged dispute over "ownership and control over IP

incorporated into Stream's assets" (¶ 164), there is again no live case or controversy between

VSI and SeeCubic.  The Complaint does not allege, for example, that VSI owns any intellectual

property incorporated into the Stream TV assets that SeeCubic purchased in the Court-approved
363 Sale—only Rembrandt.  And any dispute over the "ownership and control" of Rembrandt's
intellectual property is between Rembrandt and SeeCubic, not VSI.

**B.    Count II—"Injunction"—Should Be Dismissed Because It Is Not a
Cognizable Causes of Action as a Matter of Law**

Count II for "Injunction" should be dismissed because it is not recognized as standalone
cause of action under Pennsylvania or federal law; rather, it is a remedy.  *See Jones v. GEICO
Choice Ins. Co.*, 617 F. Supp. 3d 275, 287 (E.D. Pa. 2022) ("[T]he count for injunctive relief
must also be dismissed because injunctive relief is a remedy, not an independent cause of
action."), *aff'd sub nom. Berardi v. USAA Gen. Indem. Co.*, No. 22-2231, 2023 WL 4418219 (3d
Cir. July 10, 2023).

**C.    VSI Fails to State a Claim for Conversion (Count VI)**

Under Pennsylvania law, "conversion is the deprivation of another's right of property in,
or use or possession of, a chattel, or other interference therewith, without the owner's consent
and without lawful justification." *Stevenson v. Econ. Bank of Ambridge*, 413 Pa. 442, 451 (1964)
(citation omitted).  As it relates to SeeCubic, VSI's conversion claim fails as a matter of law
because the Complaint fails to identify what property owned by VSI has been allegedly
converted by SeeCubic.  VSI generically alleges that "Defendants" converted VSI's "technology
and litigation rights subject to VSI's control under the Rembrandt-VSI Litigation Funding
Agreement. ¶¶ 183-84.  It is undisputed, however, that SeeCubic is not a party to that agreement
and has not received anything pursuant to that agreement.  Under these circumstances, VSI fails
to explain how SeeCubic has exercised or is exercising dominion or control—let alone wrongful
dominion or control—over VSI's alleged rights under that agreement.

15

### D.    VSI Fails to State a Claim for Violation of the Defend Trade Secrets Act (Count VII)

To plead a claim of trade secret misappropriation under the DTSA, 18 U.S.C. §§ 1831 to 1839, a plaintiff must provide plausible factual allegations "(1) that they own a trade secret and (2) that the defendant misappropriated the trade secret." *Ecosave Automation, Inc. v. Del. Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021) (citation omitted).  The Complaint fails to establish any of the requisite elements.

### 1.    VSI Does Not Have Standing to Assert Claims for Misappropriation of Rembrandt's Trade Secrets

Count VII should be dismissed because VSI lacks standing under the DTSA.  The DTSA provides a right of action to "[a]n *owner* of a trade secret that is misappropriated."  18 U.S.C. § 1836(b)(1) (emphasis added).  Courts have interpreted the ownership requirement to also include current licensees of the trade secrets in question.  *E.g.*, *Biohaven Therapeutics Ltd. v. Avilar Therapeutics, Inc.*, No. 23-328-JLH-CJB, 2025 WL 2443517, at *12 (D. Del. May 1, 2025).  The Complaint does not allege that VSI is the owner of any trade secrets, let alone trade secrets that were misappropriated.  Instead, VSI seeks to recover for the alleged misappropriation of *Rembrandt's* trade secrets.  ¶¶ 187-88 (referencing the transfer of and alleged rights in Rembrandt's trade secrets).  But VSI is neither the owner nor a current licensee of Rembrandt's trade secrets.  The Complaint does not plead—nor could it—that VSI owns Rembrandt's trade secrets.  *See generally* Compl.  Nor does the Complaint plead that VSI is a current licensee of any Rembrandt trade secrets.  To the contrary, the Complaint expressly acknowledges that VSI does not have a license:

- The Complaint does not plead that Rembrandt granted VSI a license to any trade secrets in the LFCA.  It did not.  *See* Bankr. Docket ECF No. 1058 at Exs. 1-3.

16

- The Complaint expressly acknowledges that Rembrandt agreed to provide a license to **Stream TV**, which could be transferred to VSI **if** VSI were to acquire Stream TV as part of a proposed plan of reorganization.  ¶¶ 85-87.  That proposed plan was not approved, and the acquisition did not occur.  *E.g.*, ¶ 122 (noting that the Trustee decided to pursue a sale of Stream TV's assets in lieu of pursuing the proposed plan).[7]

### 2.    Even If VSI Had Standing, the Complaint Fails to Plead Even the Most Basic Elements of a DTSA Claim

Even if VSI had standing to pursue the DTSA claim—it does not—the Complaint fails to state a claim under the DTSA for several, independently dispositive reasons.

*First*, the Complaint does not identify the trade secrets that were allegedly misappropriated, let alone with the specificity required by the DTSA.  To plead the existence of a trade secret, "[a] plaintiff must identify the trade secret with enough particularity 'as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade.'"  *Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-cv-02888, 2021 WL 229322, at *4 (E.D. Pa. Jan. 22, 2021) (citation omitted).  This is because "[t]rade secrets are a *narrow category* of confidential information; to survive a motion to dismiss, a party alleging that it owns a trade secret must put forth specific allegations as to the information owned and its value."  *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-cv-5540 (KBF), 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) (emphasis added).  A complaint that provides "no hint at what the relevant trade secrets might be" is inadequate.  *Danping Li v. Gelormino*, No. 3:18-cv-442

---

[7]     To the extent that any Rembrandt intellectual property were incorporated into what was formerly Stream TV's technology (¶ 186), the Complaint also does not plead that VSI has the right to pursue claims on Stream's behalf.  It has none.

(MPS), 2019 WL 1957539, at *8 (D. Conn. May 2, 2019).  The Complaint here does not

identify—at all—what the alleged trade secrets at issue are.

Second, the Complaint fails to allege—at all—that VSI (or anyone) took reasonable

measures to protect the purported trade secrets.  In order to qualify for protection as a "trade

secret," the owner must have "taken reasonable measures to keep such information secret."  18

U.S.C. § 1839(3)(A).  A DTSA plaintiff bears the burden of pleading that it took such measures.

See Gov't Emps. Ins. Co. v. Nealey, 262 F. Supp. 3d 153, 167-72 (E.D. Pa. 2017) (dismissing

DTSA claim where plaintiff failed to plead what reasonable measures were taken).  The

Complaint does not identify any measures taken to protect the alleged trade secrets.

Third, the Complaint fails to allege that SeeCubic misappropriated Rembrandt's trade

secrets.  VSI's DTSA claim is premised on the alleged improper transfer of Rembrandt's trade

secrets to SeeCubic through the 363 Sale.  ¶¶ 186-87.  But the 363 Sale Order and associated

Asset Purchase Agreement expressly exclude any Rembrandt intellectual property—trade secret

or otherwise—from the list of assets being sold.  See Sale Order and Asset Purchase Agreement,

ECF No. 876 at 17, 52-53.  In any event, as a matter of law, there can be no wrongful

misappropriation when the transfer of allegedly misappropriated property was done pursuant to a

court order, as the 363 Sale was.  Cf. Stephanatos v. Wayne Twp., No. 12-1793 (FSH), 2013 WL

1629078, at *5 (D.N.J. Apr. 15, 2013) ("Again, Plaintiff fails to sufficiently plead a conversion

of property claim, because there is no factual averral to rebut the lawful justification to take

control of Plaintiff's property: the Court Order granting the tax foreclosure to proceed and

allowing the Township to take control over Plaintiff's property.");  Easter v. City of Dallas

Probate Div., No. 3:21-CV-0860-D (BH), 2022 WL 2975349, at *11 (N.D. Tex. June 27, 2022)

(property transferred pursuant to court order could not be subject of conversion claim); Slaieh v.

18

*Simons*, 584 B.R. 28, 42-43 (C.D. Cal. 2018) (no violation of California unfair competition

statute related to bankruptcy trustee's sale of estate property where sale was done pursuant to

order from the bankruptcy court).[8]

> ### E.     VSI Fails to State a Claim for "Civil Conspiracy/Aiding and Abetting" (Count VIII)

VSI's final cause of action against SeeCubic, "Civil Conspiracy/Aiding and Abetting"

should likewise be dismissed.  As an initial matter, Pennsylvania law does not recognize a cause

of action for "civil conspiracy/aiding and abetting."  To the extent that VSI is attempting to

assert either a civil conspiracy *or* an aiding and abetting claim, it does not state a claim for either,

and Count VIII should be dismissed.

Under Pennsylvania law, civil conspiracy requires "(1) a combination of two or more

persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful

means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose,

and (3) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  The

Complaint conclusorily alleges that "Defendants . . . deprived to combine to deprive VSI of its

contractual rights and to transfer technology unlawfully."  ¶ 191.  Again, the Complaint contains

no allegations suggesting that SeeCubic had *anything* to do with the Rembrandt-VSI Litigation

Funding Agreement or the alleged deprivation of VSI's rights thereunder.  And to the extent that

VSI's civil conspiracy claim rests upon the alleged "unlawful" transfer of technology, it fails for

multiple reasons, including that:

---

[8]     *See also Whitehead v. Allied Signal, Inc.*, No. 98-6305, 1998 WL 874868, at *2 (10th Cir.
Dec. 16, 1998) ("It is a general rule of tort law that court orders validate actions that would
otherwise constitute intentional property torts such as conversion and trespass.").

- "[C]ivil conspiracy may not exist without an underlying tort," *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000), and, as described herein, VSI has failed to state a claim for conversion—the only tort at issue in the Complaint.

- Even assuming that Defendants "colluded" to transfer Stream TV's assets in the 363 Sale (¶ 190), the transfer was not unlawful. Instead, it was conducted pursuant to this Court's Sale Order.

Similarly, to state a claim under Pennsylvania law, to state a claim for aiding and abetting, a plaintiff must plead that the defendant "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" *Monge v. Univ. of Pa.*, No. 22-2942, 2023 WL 3594471, at *8 (E.D. Pa. May 22, 2023) (quoting Restatement (Second) of Torts § 876(b) (1979)). The Complaint fails to plead *any* of these elements. For example, there are no allegations that: (i) any Defendant owed an actionable duty to VSI;[9] (ii) there was a breach of that duty; (iii) SeeCubic knew any party breached a duty to VSI; or (iv) SeeCubic gave substantial assistance or encouragement to any party to breach a duty to VSI.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to SeeCubic.[10]

---

[9]    VSI may claim that Rembrandt owed it contractual duties. However, aiding and abetting a breach of contract is *not* a tort recognized in Pennsylvania. *See Acclaim Sys., Inc. v. Infosys, Ltd.*, No. 13-7336, 2015 WL 4257463, at *5 (E.D. Pa. July 14, 2015) ("Pennsylvania law only recognizes aiding and abetting liability if there is underlying *tortious* conduct." (emphasis original)).

[10]    For the same reasons, the Complaint should be dismissed against SeeCubic B.V. ("SCBV"), a SeeCubic subsidiary based in the Netherlands. The Complaint contains zero factual allegations concerning how SCBV somehow injured VSI. SCBV is simply lumped into the same causes of action as SeeCubic in VSI's shotgun pleading against "Defendants,"

Dated: October, 14, 2025

Respectfully submitted,

**SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP**

<u>*/s/ Joseph O. Larkin*</u>
Joseph O. Larkin (I.D. No. 206047)
920 N. King Street, One Rodney Square
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Facsimile: (302) 651-3001

- and -

James J. Mazza, Jr. (admitted *pro hac vice*)
Justin M. Winerman (admitted *pro hac vice*)
320 S. Canal Street
Chicago, Illinois 60606-1720
Telephone: (312) 407-0549
Facsimile: (312) 407-8641

- and -

Eben P. Colby (admitted *pro hac vice*)
Marley Ann Brumme (admitted *pro hac vice*)
500 Boylston Street, 23rd Floor
Boston, Massachusetts 02116
Telephone: (617) 573-4800
Facsimile: (617) 573-4822

*Counsel for SeeCubic, Inc.*